

FILED

OCT 18 AM 11:24

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Scott W. Davis, Pro Se

CMC-West / P.O. Box 8103

Unit 1/Dorm 10/Bed 44 Up

San Luis Obispo, CA. 93403-8103

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## C No: 07    5314 (PR)

| | |
|---|---|
| SCOTT W. DAVIS, an individual )<br><br>Plaintiff. )<br>vs. )<br>DRUG COURT TREATMENT CENTER, )<br>Individuals Debbie Pope, Counselors )<br>Bill, Debbie, and Tommy, et.al. )<br><br>And DOES 1-10 inclusive )<br>Defendants. ) | COMPLAINT UNDER CIVIL RIGHTS ACT §1983<br><br>JURY TRIAL DEMAND; F.R. Civ. P 38(b)<br><br>1) **VIOLATION OF ESTABLISHMENT CLAUSE PURSUANT TO TITLE 42 U.S.C. §1983**<br><br>2) **DENIAL OF PROTECTED RIGHTS UNDER CALIFORNIA LAW**<br><br>3) **VIOLATION OF FREE EXERCISE CLAUSE**<br><br>Amount demanded: $1,300,000 |

### STATEMENT OF CASE

PLAINTIFF contends the mere fact of his brief pre-sentence attendance designed to demonstrate his commitment to rehabilitation, did not amount to a consent to the aspect of the sentence that required participation in religious exercises. Plaintiff alleges defendants did not offer an alternative to NA/AA as in meaning , secular meeting. Plaintiff believes any waiver of rights is not valid due to DAVIS being in Drug Court illegally per PC§1210,-1211 Plaintiff is also claiming these issues above contributed to his incarceration on the above mentioned causes of action. Conviction is not being disputed here. Defendants forced violation of probation.

1

E-008
0901

1

STATEMENT OF CASE (cont.)

2      This instant action arises from the unlawful and premeditated

3  constitutional violations perpetuated by the Drug Court Treatment  Center

4  (D.C.T.C.) Sonoma County Probation Department (S.C.P.D.), and Administration and

5  County Alcohol & Drug Program (A.C.A & D.P. ).  Plaintiff was coerced and

6  forced to attend NA/AA meetings under threat of consequences of getting

7  kicked out of Drug Court and sent to prison for failure to go to at least

8  five NA/AA meetings a week.  Plaintiff was still threatened after notifying

9  Drug Court Counselors and Drug Court Judge that participation in those

10 meetings were very uncomfortable because it was forcing him to participation

11 in actions contrary to his religious beliefs.  The named defendants above

12 actions amounted to establishment of religion prohibited by First Amendment

13 and blocking his own religious practices.  Plaintiff now brings this action

14 in an effort to seek relief from prejudicial persecutions carried out under

15 color of law.

16                                **PARTIES**

17                                   1.

18      Plaintiff SCOTT WILLIAM DAVIS (SCOTT W. DAVIS) is an adult male and

19 a resident of the County of Sonoma, State of California.

20                                   2.

21      Defendants SONOMA COUNTY PROBATION DEPARTMENT, D.C.T.C., Staff of

22 D.C.T.C. , and A.C.A. &D.P.  They are within the boundaries of the Northern

23 District of California, as are the individual defendants DEBBIE POPE, and

24 Counselors 'Bill', 'Debbie', and 'Tommy'.

25

26                                   3.

27      Plaintiff is ignorant of the true names and capacities of defendants'

28 sued herein and therefore sues these Defendants by such Jane Does and John

1  Does. Plaintiff will amend this complaint to allege their true names and

2  capacities when ascertained. Plaintiff is informed and believes and thereon

3  alleges that each of these fictitiously named Defendants is responsible in

4  some manner for the occurrences herein alleged, and Plaintiff injuries as

5  herein alleged were proximately caused by the aforementioned Defendants. The

6  Plaintiff is informed and believes and thereon alleges that each of the

7  Defendants' herein was, at all times relevant to this action, the agent, the

8  employee, representing partner, supervisor, managing agent, or joint venturer

9  of the remaining Defendants and was in action within the scope of that rela-

10 tionship. Plaintiff is further informed and believes and thereon alleges that

11 each of the Defendants herein gave consent to, ratified, and authorized the

12 acts alleged herein to each of the remaining Defendants. Defendants are sued

13 both in their own right and on the basis of respondeat superior.

### JURISDICTION AND VENUE
4.

15     Jurisdiction of this action is conferred upon this court by 42 U.S.C.

16 §1983, 42 USC §1985(3) which gives the right to a cause of action for conspi-

17 racy which deprives a citizen of the United States of any right or privilege;

18 the First, Fourth, Fifth, Seventh, Eighth, Ninth, and Fourteenth Amendments

19 to the Constitution of the United States. The court is requested to assume

20 control of the collateral state claims under the doctrine of pendent juris-

21 diction as the claims arising thereunder involve the same actions and set of

22 circumstances. See e.g. Uhl v. Ness City, Kansas, 406 F.Supp. 1016 (D.C.

23 Kansas 1975), affirmed 590 F.2d 839. 28 U.S.C. 1331; 1338; The federal

24 question statutes. This Court further has supplemental jurisdiction over

25 Plaintiff's state law claims under 28 U.S.C. 1367(a) and Savage v. Glendale

26 Union High School Dist. No. 205 (9th Cir.) 2003.

27                                         5.

28     Venue over Defendants is proper as Defendants reside in the Northern

District of California, and at times relevant to this action, Plaintiff has
resided in the Northern District of California.  Thus venue is proper under
28 U.S.C. §1391.  This civil action is requested to commence in San Fran-
cisco District Court via the intradistrict assignment.

### FACTS

6.

Plaintiff was sentenced by Robert S. Boyd, Dept. 15, in Sonoma County
Superior Court, State of California, on 8-25-05 to Drug Court after a vio-
lation of probation.

7.

Plaintiff was in Drug Court until 11-06-06 when he was dropped  for
a supposed lack of interest in program.

8.

Plaintiff would state this is partially right, he did have a interest
in not continuing because he was subjected and coerced to attend NA/AA
meetings while at Drug Court.  Sometime between December 2005 and February
2006, plaintiff let his counselor 'Bill' know and other  counselor 'Debbie'
(while she filled in for plaintiff's counselor)   that he was offended
by the way NA/AA was operating in the Sonoma County Chapter.  That it went
against his religious beliefs (Baptist) and was offensive in many ways.
When plaintiff tells her and    staff, he is told to continue meetings or
be kicked out of program and be put in prison.  Plaintiff complies reluc-
tantly becuase of threats. Plaintiff starts to get bad reports now.

Plaintiff subsequently goes higher in rank in Drug Court to voice his
concerns and beliefs to try to come to a solution to problems with NA/AA
clashing with personal religious beliefs.

9.

Plaintiff talks to counselor "Tommy" who is supervisor of 'Bill' and

1   "Debbie'.  Plaintiff tried to explain how offensive NA/AA is here in Sonoma County.

2   Plaintiff describes how counselors ridiculed him over religious beliefs opposed to

3   NA/AA.  Plaintiff tells 'Tommy' of how they accuse him of not being serious.  DAVIS,

4   the plaintiff here, tells 'Tommy' of wanting to focus on church instead, that this

5   is a type of God he does not follow.  Also the Big Book and its concept of working

6   steps to find God to help you with addiction is uncomfortable.  One of the most

7   offensive things is working with a sponsor to tell you how to work the steps and

8   interact with God, which is foreign and offensive also.  DAVIS explains in this

9   meeting and others how NA/AA with references to God are offensive and opposite of

10  his church teachings.  The closing with the Lord's Prayer with people in NA/AA was

11  wrong in plaintiff's religious beliefs, because some have no belief in Jesus.

10.

13  Plaintiff was met with some hostility as before and told, "You didn't come here

14  to go to church, go to prison if you don't like it."  He again, complies reluctant-

15  ly because of threats.  Bad reports continue on plaintiff.

11.

17  Judge Boyd becomes aware of these issues at regular visits to Drug Court Dept.

18  15.  Judge Boyd asks plaintiff what his problem is concerning going to meeting.(NA/

19  AA)  Plaintiff tells Judge that it clashes with his religious beliefs.  Judge Boyd

20  replies, "Do what you're told", in a stern tone and excuses plaintiff from court.

21  (Plaintiff had updates every two weeks)

12.

23  Again, plaintiff is receiving a lot of flack accusing him of not being serious

24  about recovery.  Plaintiff is then directed to go to **more hard core meetings such as**

25  **"Step Study Meetings"** and to find a sponsor and work **"first three steps"** or he can-

26  not graduate.  These actions put a lot of pressure on plaintiff because 'Step Study'

27  meetings are more spiritually intense than regular meetings.

28  //

13.

On March 9th, 2006, the     plaintiff is so upset and stressed out over these meetings that he is admitted for an overnight stay a mental health facility (Oakcrest). Plaintiff gets a little counseling and proceeds back to same situation dealing with Drug Court staff still resenting the fact that plaintiff does not embrace their beliefs in NA/AA.

14.

Some Months later "Davis" is told to do 90 days and 90 meetings, at this point this is effecting plaintiff's attendance at church. Plaintiff was attending morning services at Baptist Church in Santa Rosa and six p.m. in the evening. Plaintiff now cannot have a day of rest to worship, a Baptist rule and tradition. Plaintiff believes now        that free exercise of religion is violated at this point, but was confused as how to deal with it at that time.(Plaintiff has no driver's license)

15.

At this point, Davis tries to address everything with D.C.T.C. Director directly. Plaintiff,Davis gets a meeting with Director Debbie Pope at her Farmers Lane Office. Plaintiff discusses all his beliefs and issues he had with counselors concerning religious beliefs. The meeting ends with Pope stating, she would talk to counselors, but insisted half the problem was with the plaintiff. Davis was reluctant at this point to disagree on the religious issues because of previous threats. Plaintiff believes that at this juncture that all remedies possible were exhausted based on the fact he had voiced his concerns from Judge on down.

Plaintiff could only talk to the Psychiatric Technician (Allison) who worked part-time at Drug Court in One-on-One Counseling Sessions that were "confidential".

//

16.

Some weeks later again Plaintiff was told to complete the first three steps of the NA/AA Program or he would not graduate. Plaintiff believes he can no longer comply with the program and is now faced with a dilemma of faking or lying to Drug Court of working these steps with his sponsor. For plaintiff to work these steps with his sponsor in the tradition of NA/AA a type of spiri- tuality/program, in essence another man telling plaintiff how to worship God in his daily life (**exactly opposite of his Baptist beliefs**).

Plaintiff stalls on this because he does not want to lie or be forced to break religious beliefs. So after being in this Catch 22 so to speak, plaintiff informs Judge Boyd he does not want to continue because he does not want to lie or break church doctrine. Plaintiff had missed a test at this time also.

17.

At a certain point in time, plaintiff's counselor "Bill' forced plaintiff to read the Big Book. This also occurred with Supervisor 'Tommy', who had the plaintiff doing daily readings out of the Big Book when 'Tommy' eventually be- came plaintiff's counselor.

18.

After plaintiff tells Judge Boyd he does not want to continue because of his religious beliefs conflicting with NA/AA religious doctrine, Judge Boyd takes plaintiff into custody. Plaintiff has hoped Judge Boyd and counselors would show some kind of mercy towards him because he did do over 14 months there and the fact plaintiff was forthcoming with what was going on with him in regards to meetings. Plaintiff thought he did show he was serious about recov- ery by sticking it out and not running or lying as others had done while he had attended Drug Court. This was not to be though.

19.

Plaintiff was dropped from Drug Court on 11-06-06 and was violated over

1    ·Poor performance and lack of interest.  The court stated, RF. EX. "C"·,

2    Plaintiff believes they carried out their·promised threats.

                                  20.

4    Petitioner also alleges that a substantial part of Drug Court (Drug

5    Court Treatment Center, hereafter as D.C.T.C) classes were connected to NA/AA

6    meetings.  We had Step Study meetings and videos relating to NA/AA groups.  In

7    essence **(NA was 95% of program)**, which was not made clear in beginning.  The

8    talks of a higher power and studies on higher power permeated D.C.T.C. peer

9    group meetings and classes.  There were usually 2 tO 3 meetings like this to

10   attend at D.C.T.C. offices on top of mandatory 5 NA/AA meetings per week.

                                  21.

11   Plaintiff was also paying fees for his rehabilitation.  Refer to con-

12   tract, Exhibit 'B', page two number 8.  Plaintiff was told of jsut attendance

13   of NA/AA not indocrination of all other requirements that was put on him.  Before

14   joining D.C.T.C., DAVIS, had a brief look at a list of requirements that are

15   listed in Exhibit D.  Plaintiff's quick overall view of these requirements did

16   not make clear to him all that D.C.T.C. required.  See Exhibit E.  It looked on

17   the face of it·there was much more to program than just being about ninety-five

18   (95%) NA/AA.

19   One of the most important events that transpired was in the beginning

20   on 8-25-06, when Debbie Pope the Director of D.C.T.C. pre-screened DAVIS at

21   jail, when asked by Judge if DAVIS fit criteria, her reply was yes (not until

22   after plaintiff was forced out of D.C.T.C. because of religious intolerance,

23   and sent to prison did DAVIS find out he was there illegally per PC §1210.1.

24   All defendants set back and said nothing.

25   In addition, plaintiff was coerced at NA/AA meetings to contribute a

26   donation to the operation of the meetings, part of their SEventh Tradition.

27   This takes place at every meeting.  Sometimes plaintiff gave reluctantly and

28   other times he had to defend himself as to why not contributing to the basket

1    passed around at all the meetings. In the end Davis tried to work with

2    Jerry Knokes of T.A.S.C. to find a solution before sentencing on

3    12/ 19/ 06, (Judge, DCTC never mentioned these facts.

4                       22.

5       Plaintiff is now currently at CMC-West in San Luis Obispo, California,

6    serving out a 3 year sentence for Petty Theft with a Prior , because of

7    religious intolerance that caused  poor    performance reports    The

8    plaintiff sums up the whole episode as to being forced to attend NA/AA as

9    compared to somenone being forced to attend a Mosque, Mormom Church, or a

10   Jehova Witness, meeting, you work out of their different books and practice

11   what they practice. That is how uncomfortable that plaintiff was in this

12   situation. Plaintiff to be released on 1-26-2008.
                         23.

13                   **LEGAL CLAIMS**

14      The facts related above disclose a concerted and systematic effort by

15   the defendants to deprive the plaintiff of his constitutionally secured

16   rights, but  not   limited . to, those enumerated in the succeeding

17   paragraphs.

18      42 USC §1983, states::

19      Every person who, under color of any statute, ordinance, regulation,
        custom, or usage, of any State of Territory, subjects, or causes to be
20      subjected, any citizen of the United States or other person within the
        jurisdiction thereof to the deprivation of any rights, privileges, or
21      immunities secured by the Constitution and laws, shall be liable to the
        party injured in an action at law, suit in equity, or other proper
22      proceeding for redress.

23      42 USC §1985(3)

24      Which gives the right to a cause of action for a conspiracy which

25   deprives a citizen of the United States of any right or privilege; the First,

26   Fourth, Fifth, Seventh, Eighth, Ninth and Fourteenth Amendments to the Con-

27   stitution of the United States.

28      Equal rights under the law.  42 USC §1981

1    Conspiracy to interfere with civil rights 42USC §1985.

2    Freedom from violence or threat of violence because of protected characteristics.

3  Cal. Civil Code §51.7.

4    Protection from interference with rights by threats, intimidation, coercion, or

5  violence.  Civ.Code §52.1.

6                      **FIRST CAUSE OF ACTION**

7    Violation of First Amendment Right (Establishment Clause)

8                      **(42 U.S.C. §1983,et seq.)**

9    Plaintiff incorporates by reference the allegation contained in paragraphs 1-23

10  as though fully set forth herein.

11                      24.

12    Defendants willfully and/or with reckless indifference violated the above enum-

13  erated statutory and constitutional rights of the Plaintiff when they wantonly dis-

14  criminated against the Plaintiff by conducting a clearly violative and unlawful

15  procedure to force plaintiff to attend NA/AA religion based programs.  Plaintiff

16  relies first on Lee v. Weismen (1992) 505 U.S. 577 for the proposition that the gov-

17  ernment may not coerce anyone to participate in religion or its exercise.  This is

18  exactly what happened to "Davis", the plaintiff, in the case at bar.  As stated,

19  plaintiff was told after complaining of NA/AA meetings being offensive and conflicting

20  based on religious beliefs.  D.C.T.C. Staff counselors, Director told plaintiff to

21  continue or there would be consequences, so as getting kicked out and going to prison.

22                      25.

23    In Warner v. Orange County Dept. of Probation (1997), 115 F.3d.1068 sending

24  Warner to AA as a condition of probation without offering  a choice of other pro-

25  viders, plainly constituted coerced participation in a religious exercise ( a viola-

26  tion of the Establishment Clause) the Court stated.  Plaintiff contends same here.

27  Over 14 months of voicing his concerns over NA/AA being offensive and conflicting with

28  his religious practices.  The injury to plaintiff was enormous unlike in Warner.

1    Penal Code §1210.1 is a narrowly tailored statutory scheme that requires the

2    trial court to treat those convicted of non-violent drug possessions offenses "as a

3    separate class subject only to the special probation rules" expressly included in sec.

4    1210.1.  In re Mehdizadeh, supra, 105 Cal.App.4th at p. 1005.

5    More significantly, "an accused may waive any rights in which the public does

6    not have an interest and if waiver of right is not against public policy [cite](Cowan

7    v. Superior Court, supra, 14 Cal.4th at p. 371).  The stated purpose of Proposition 36

8    to halt the wasteful expenditure of hundreds of millions of dollars each year  on  the

9    incarcerated and reincarceration on non-violent drug users who would be better served

10   by community based treatment.

11                                    26.

12   Defendants might try to say plaintiff gave up his rights, but this is not possi-

13   ble, due to being in Drug Court illegally under PC §1210.1, an order from Judge Boyd

14   due to recommendations of S.C.P.D. and D.C.T.C.

15   Administration and County Alcohol and Drug Programs liability stems from Penal

16   Code §1211, which states, "the County Drug Program administrator in each county, in

17   consultation with representatives of the Court and County Probation Department, shall

18   establish requirements, criteria, and fees for the successful completion of drug

19   diversion programs which shall be approved by the County Board of Supervisors.

20   Furthermore, plaintiff, was held over twelve (12) months in D.C.T.C. in viola-

21   tion of Penal Code §1210.1(c)(3) Drug treatment services provided by subdivision (a) as

22   a required condition of probation **may not exceed 12 months,** provided, however,  that

23   additional aftercare services as a condition of probation may be required for  up  to

24   six months.  This was not the case for the plaintiff, he was kept over 14 months.

25   This was in primary care and not aftercare.  Defendants hostile actions toward DAVIS

26   was so offensive as to drive him out of D.C.T.C. and the Drug Court.  DAVIS would point

27   out it was Debbie Pope of D.C.T.C. who pre-screened DAVIS at jail and told Judge he was

28   eligible.  If not for this gross error and Probation Department going along with this

E-008
090)

27.

it very well could have turned out different for plaintiff. Remarkably, this took place over the recommendations of T.A.S.C. who DAVIS was a client of. See memo in Exhibit F. It recommends 30 day program and 6 months outpatient, not the illegal long-term program. DAVIS alleges defendants acted with malice and forethought. ...
T.A.S.C. job for county is placement of people to programs for county. Davis also disputes judges comments in sentencing of Davis not wanting to continue in any type of rehab. Davis was working with T.A.S.K. at this time.

28.

Defendants violated plaintiff's rights in regards to, plaintiff was put in Drug Court illegally under law. Proposition 36 mandates probation and drug treatment for defendants convicted of non-violent drug possession offenses are defined as unlawful possession for personal use, or transportation for personal use of any controlled substance identified in Health and Safety Code §11054 (including heroine, LSD, cocaine base, marijuana) §11055 (including cocaine, methamphetamine, and PCP), §11056, §11057, §11058, Penal Code §1210.

29.

Plaintiff has no drug convictions. Plaintiff was on probation for Petty Theft with a Prior (Penal Code §666). This is not a non-violent drug charge, this is a non-violent theft charge. Defendants excluded under Penal Code §1210.1(b) excludes five categories of defendants, one of which is a felony conviction other than a non-violent drug possession offense. Defendants willfully and recklessly allowed plaintiff to be subjected to modified probation and D.C.T.C. needlessly. D.C.T.C., probation, and D.A. all allowed this injustice. In fact, in viewing of , exhibit "A", between lines X10 and X13, you can see where notification of being a drug offender to police was crossed out because they knew plaintiff was not there on non-violent drug offense. This is deliberate and mean spirited and can been seen in that,

threatened consequences were carried out.  Remarkly, even after the stress of coer-

cion drove plaintiff to an overnight say at a mental health facility.

30.

In <u>Warner</u>, the Court used the three-part test of <u>Kerr</u> v. <u>Farrey</u> (7th Cir. 1996)

95 F.3d 472.  First: As to the requirement of the state action, B.P.T. told Kerr

he had to participate in N/A to parole.  <u>Plaintiff has same type of action, D.C.T.C.</u>

<u>and Drug Court Judge still compelling plaintiff to continue regardless of religious</u>

<u>objections.</u>  The Second test: Does the action amount to coercion?; as in <u>Kerr</u> who

was told he would never parole.  <u>Plaintiff was told he would never graduate if he</u>

<u>did not continue with NA/AA meetings.</u>  The third test in <u>Kerr</u>:  Was the coercion

religious, because of the NA/AA reference to God necessarily implied a spiritual

system of worship?  The Court in <u>Kerr</u> followed Second Circuit in <u>Warner</u> accordingly

and Seventh Circuit  <u>Kerr</u> (supra) to hold requiring participation NA is an Establish-

ment of Religion prohibited by the First Amendment.  Which is exactly what happened

in plaintiff's case.

31.

Plaintiff being told after notifying D.C.T.C. and Drug Court Judge of uncomfor-

table conflict in religious aspect, should have honored contract he signed with them

and let him do something else instead of trying to force plaintiff into the deeper

aspects of NA/AA program by forcing Big Book (AA) and a requirement of First Three

Steps to be done with a sponsor before he could graduate.  There can be no mistake

on the spiritual and religiousness of NA/AA.

32.

**Step 1:  We admitted that we were powerless over our addiction, that our lives**

**had become unmanageable.  Step 2:  We came to believe that a Power greater than**

**ourselves could restore us to sanity.  Step 3:  We made a decision to turn our will**

**and our lives over to the care of God as we understood Him.**

A straight forward reading of the 12 Steps shows clearly that the steps are

MC-CE-008
(8/04) 0901

based on the monotheistic idea of a single God or supreme Being.  The
relevant Establishment Clause precedent bars governmental endorsement and
support of religion even in context in which no coercion exists.  The
preservation and transmission of religious beliefs and worships is com-
mitted to the private sphere (Lee, 505 U.S. at 589) and government  may
not support religious practices even when those engage in them have
freely chosen to do so

33.

Even though there was some notice of NA/AA meetings in the begin-
ning, plaintiff was not ware of the degree and intensity of spirituality
part in the Sonoma County chapter.  Additionally plaintiff did not know
D.C.T.C. was mainly NA orientated pushing of reading of Big Book and
working the steps with a sponsor in NA/AA meetings.  Plaintiff was just
told of attendance, not all the other requirements that were added after
he joined, that were offensive on a religious basis. concerning N/A.

34.

Plaintiff believes he shows that D.C.T.C. and Sonoma County
Probation Department (hereafter refer to as S.C.P.D.) that they are
liable for a his sentence to Drug Court because of their recommendations
and special conditions of probation.  See Owen v. City of Independence,
445 U.S. 622, 63 L.Ed.2d. 673, 100 S.Ct. 1398 (1980), which held  that
municipalities do not benefit from the qualified immunity of their
officers.  See also Reed v. Village of Shorewood, 704 F.2d 943, 953
(7th Cir. 1983)(extending the rule of Owen regarding qualified immunity
to find a municipality potentially liable for its officers' executive
acts, though the officers themselves were protected against absolute
immunity). Scotto v. Almenas (2nd Cir. 1998) 143 F.3d 105 [Private parties
conspiring with state actors under color of law maybe liable at times].

14

1    Plaintiff was sentenced on 8-25-05 in Department 15 by Judge Boyd in

2    Sonoma County Superior Court under the care of D.C.T.C.  A conditional

3    sentence with special conditons "like in **Warner**" these special  conditions

4    were recommended    Hereby, the D.C.T.C. and Probation Department (the

5    Director, Debbie Pope, of D.C.T.C. set forth a standard form used by the

6    Drug Court routinely provided to Judge in the Drug Court).  Judge  Boyd

7    sentenced plaintiff to 18 months conditional sentence and at least  nine

8    months in participation in Drug Court (see contract in exhibit "A" and "B").

9    In imposing these special conditions, Judge Boyd endorsed the Drug  Court

10    standard forms and practices of S.C.P.D. and D.C.T.C.

11    Plaintiff again believes defendants are liable because his injury

12    resulted from a custom or policy of D.C.T.C. and S.C.P.D., as  opposed to

13    and isolated instance of conduct (Monell v. Department of Social Services

14    436 U.S. 658, 690-91, 56 L.Ed.2d. 611, 98 S.Ct. 2018 (1978).  See  also

15    Adickes U.S.H. Kress and Company, 398 U.S. 144, 162-67, 26 L.Ed.2d 142,

16    90 S.Ct. 1598 (1970)(describing congressional intent in creating liability

17    for custom or practice).  Plaintiff alleges D.C.T.C. and S.C.P.D. recommen-

18    dation that he be required to participate in NA/AA therapy unquestionably

19    made pursuant to a general policy that was in the original contract signed

20    by plaintiff.  These meetings and conditions of participating in Drug Court

21    are routinely submitted to Drug Court Judge.

22                                    36.

23    The Supreme Court has made it crystal clear that principles of causa-

24    tion borrowed from tort law are relevant to civil rights actions brought

25    under section 1983 (Buenrostro v. Collazo, 973 F.2d. 39, 45 (1st Cir. 1992).

26    See Malley v. Briggs, 475 U.S. 335, 344 n.7, 89 L.Ed.2d. 271, 106 S.Ct.

27    1092 (1986); Monroe v. Pape, 365 U.S. 167, 187, 5 L.Ed.2d. 492, 81 S.Ct.

28    473 (1961).  However, tort defendants, including those sued under §1983 are

15

1   responsible for the natural consequences of [their] actions (Malley, 475

2   U.S. at 344 n. 7)(quoting Monroe, 365 U.S. at 187). As the First Circuit

3   has explained an actor may be held liable for "those consequences attribu-

4   table to reasonability foreseeable intervening forces, including acts of

5   third parties" Gutierrez - Rodriguez, 882 F.2d. at 561.

37.

7   Plaintiff alleges Drug Court Judge relies heavily on D.C.T.C. because

8   they do screening process for all Drug Court clients.          . So there

9   is no doubt whether it was forseeable that the Judge under Prop. 36

10  would impose their recommendation of D.C.T.C. & S.C.P.D. was for-

11  seeable, the natural consequences of Judge imposing conditional sentence.

12  Quoting Monroe again, the First Circuit went on to state " A negligent

13  defendant will not be relieved of liability by an intervening cause that

14  was reasonably forseeable, even if the intervening force may have "directly"

15  caused the harm. An "unforseen and abnormal" intervention, on the other

16  hand," breaks the chain of causality thus shielding the defendant from lia-

17  bilty. Plaintiff believes the chain of causality was not broken (See White

18  v.Roper , 901 F.2d 1501, 1506 (9th Cir. 1990). Given the neutral advisory

19  role of D.C.T.C. and S.C.P.D. towards the court, it is entirely a natural

20  consequence. Again, refer to Warner for a Judge to adopt the Drug Court

21  Treatment Center recommendations as to therapy, courts generally rely heavily

22  on (especially in Prop 36 cases). See Springer, 821 F.2d at 876; Restatement

23  (Second) of Torts § 453 cmt. b (1965).

24  In Warner, the District Judge found that a Judge would follow such

25  recommendations of the Probation Department. Plaintiff asks the Court to

26  look at this very question. Plaintiff's injury          was      the

27  sentencing judge decision to send him to D.C.T.C.,        the actions of

28  NA/AA.  The NA/AA  Chapter  in  Somonma  County which  Plaintiff was exposed

had a substantial religious component.  D.C.T.C. and S.C.P.D. should have known this and not let plaintiff be exposed to this,especially after his objections.

38.

In <u>Malley</u>, supra, a Civil Rights action under §1983, against a state trooper who had procured a warrant for the plaintiff's arrest by submitting an affidavit. Plaintiff claimed the affidavit was legally insufficient.  The district court had dismissed the case, believing the police officer to be absolutely immune when swearing out a warrant.  The Court of Appeals reversed, resuscitating the action.  The officer argued in the Supreme Court not only that he was immune, but also that he was shielded from responsibility by his entitlement to rely on the judgement of the judicial officer in finding probable cause and issuing the warrant.  The Supreme Court ruled that such reliance was not justified if "a reasonably well-trained officer in [the same] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant.' Id. at 345.  If such was the case, the officer's application for a warrant was not objectively reasonable, because it risked an unnecessary danger of unlawful arrest.  "It is true," the Court observed,

> that in an ideal system an unreasonable request for a warrant would be harmless, because no judge would approve it.  But ours is not an ideal system, [**12] and it is possible that magistrate, working under docket pressures, will fail to perform as a magistrate should.  We find it reasonable to require the officer applying for the warrant to minimize this damage by exercising reasonable professional judgement.

39.

D.C.T.C. and S.C.P.D. should have not coerced plaintiff to attend NA/AA, they could have minimized plaintiff's damage by exercising reasonable professional judge-ment.  Like in <u>Malley</u> with trooper defendants are liable too.

In <u>Turner v. Hickman</u>, 342 F.Supp.2d 887 (E.D. Cal. 2004),it was held, "Requiring inmates, as a condition for being granted parole, to participate in a drug treatment program based on the concept of a higher power to which participants had to submit was an establishment of religion prohibited by the First Amendment; although the program's literature said that it was "not a religious program," it unequivocally

C-CE-008
/04) 0901

1  and wholeheartedly asserted that belief in "God" was a fundamental requirement of

2  participation.  U.S.C.A. Const.Amend.1.

3      This case is very similar to plaintiff's case.  Similarly, the Seventh Circuit

4  has ruled recently that where inmates were required to attend a substance abuse

5  program with explicit religious content on pain of being rated a higher security risk

6  and suffering adverse parole [**23] effects, the state impermissibly coerced partici-

7  pation in a religious program in violation of the Establishment Cause.  Kerr v. Farrey

8  , 95 F.3d 472 (7th Cir. 1996) ("In general, a coercion-based claim indisputably raises

9  an Establishment Clause question," Id. at 479).  See also O'Connor v. California, 855

10  F.Supp. 303 (C.D. Cal. 1994)(no Establishment Clause violation where probationers were

11  offered a choice between A.A. and a secular program).

12                          40.

13      Even if the prospect here is of well-intentioned officials, the conduct of all

14  named defedants is found to be impermissible under the Constitution.  The  injury

15  suffered by plaintiff is monumental.  Defendants showed a rare callousness throughout,

16  day in and day out ridicule of him not being serious just because of religious beliefs.

17  The plaintiff is in shock and awe that this still can happen in America today.  There

18  might be a disagreement on when the Constitutional line was crossed but plaintiff

19  believes there is no question to line being crossed.

20                          41.

21                  SECOND CAUSE OF ACTION

22          DENIAL OF PROTECTED RIGHTS UNDER CALIFORNIA LAW

23

24      Plaintiff incorporates by reference the allegaions contained in paragraphs 1-

25  40 as though fully set forth herein.

26

27      Defendants at D.C.T.C. similarly violated plaintiff's rights threaten him

28  for asserting his religious rights, a violation of Free Speech under the First Amend-

IC-CE-008
1/04) 0901

ment. This was a direct violation of Cal.Civ.Code Section 51.7, 52.1, as well as section 52(b) which provides damages as remedies for denial of protected rights, concerning retaliation under color of law.  The U.S. Supreme Court held in County of Allegheny v. A.C.L.U., Greater Pittsburgh Chapter, 492 U.S. 573, 590-91 [109 S.Ct. 3086, 3099, 106 L.Ed. 472](1989), "That the government may not promote or affiliate itself with any religious doctrine or organization, may not discriminate  against persons on the basis of their religious and practices, may not delegate a governmental power to a religious institution and may not involve itself too deeply in such an institution's affairs."


Additionally defendants' counselors "'Bill' and 'Debbie', and his supervisor 'Tommy' are guilty of harrassment and interrogation and threat under color of law to the suffering of the plaintiff, which is a natural, reasonable, and proximate result of their actions.  "Harrassment," is defined as a course of conduct directed  at  a specific person and serves no legitimate purpose.  18 U.S.C.A. 1514(c).  The term is used in a variety of legal context to describe words, gestures and actions which tend to annoy, alarm, or abuse (verbally) another person.  Again, the Supreme Court addresses this subject in West Virginia Board of Education v. Barnette, 319 U.S. 624, 642, 63 S.Ct. 1178, 1187, 87 L.Ed. 1628 (1943).  The Court held that, "No official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion force citizens to confess by word or act their forth therein.

42.

### THIRD CAUSE OF ACTION

### VIOLATION OF FREE EXERCISE CLAUSE

43.

Plaintiff incorporates by reference the allegations contained in paragraphs 1-41 as though fully set forth herein.

//

44.

Plaintiff DAVIS is entitled to the same constitutional rights as all other Americans to worship GOD in his own religion. This was not entirely possible when ninety (90) days and   (90) meetings were : put on plaintiff as a punishment. Plaintiff DAVIS is a Baptist and traditionally as a Baptist there is a day of rest and worship.

Plaintiff was unable to dedicate one day to worship during the week due to requirement of D.C.T.C. compelling him to participate everyday in NA/AA. Defendants cause and deprived plaintiff rights secured by the Constitution and laws of United States.

45.

This is a clear violation of Free Exercise Clause, refer to Elrod v. Burns, 427 U.S. 347, 373 (1976), which stated, "The loss of First Amendment freedoms, for even a minimal period of time, unquestionably constitutes irreparable injury. The defendants have caused this injury here.

46.

It was held concerning Free Exercise that government must remain neutral in matters of religion does not foreclose it from ever taking religion into account. The State may "accommodate" the free exercise of religion by relieving people from gene-rally applicable rules that inerfere with their religious callings. See, e.g. Corp. of Presiding Bishop of Church of Latter-day Saints v. Amos, 483 U.S. 327 (1987)  See also Sherbert v. Verner (1963) 374 U.S. 398. Contrary to the [*628] views of some, such accomomodation does [**2677] not necessarily signify an official endorsement of religious observance over disbelief.

By definition, secular rules of general application are drawn from the non-adherent's vantage and, consequently, fail to take such practices into account. Yet when enforcement of such rules cuts across religious sensibilities, as it often does, it puts those affected to the choice of taking sides between God and government. **This is the case at bar with DAVIS.** In such circumstances, accommodating religion reveals

CE-008
1) 0901

1  nothing beyond a recognition that general rules can unnecessarily offend the religious

2  conscience when they offend the conscience of secular society not at all.  Cf. Welsh

3  v. United States (1970) 398 U.S. 333, 340.  See Note, The Free Exercise Boundaries of

4  Permissible Accommodation Under the Establishment Clause, 99 Yale L.J. 1127,1135-1136

5  (1990).

6  **WHEREFORE,** Plaintiff prays judgment against defendants as follows:

7  ### RELIEF REQUESTED

8  1.  A declaratory judgment, pursuant to 28 USC §2201, that defendants violated

9  plaintiff's civil and legal rights when they unlawfully forced him to attend NA/AA a

10  recognized type of religion and to force plaintiff to miss his religious attendance,

11  and   the plaintiff      Being in Drug Court illegally per PC §1210 - 1211.

12  2.  An injunction preventing and restraining D.C.T.C. (non-profit org.)  and

13  S.C.P.D. as well as Administration and County Alcohol & Drug Program continuing to

14  subject people to religious programs such as NA/AA without option of secular program.

15  3.  That this Court convene a Federal Grand Jury to investigate possible

16  criminal violations of 18 USC 241 and 242.

17  4.  Damages against defendants as follows:

18  5.  Punitive damages in amount  to be determined by jury.

19  6.  As to the First Cause of Action, violation of Establishment Clause, an

20  award of $500,000 to plaintiff.

21  7.  As to the Second Cause of Action, denial of rights, an award of $300,000

22  to plaintiff.

23  8.  As to the Third Cause of Action, violation of Free Exercise, an award of

24  $500,000 to plaintiff.

25  9.  For  cost  of  suit.

26

27  10. Plaintiff  requests trial by jury in all issues triable by jury.

28  11. A grand total of 1.3 million dollars due to the plaintiff .

12. For any other relief that this Court finds true and proper.

13. That Court order release of Drug Court file to Scott Davis or plaintiff and Court can get a clear record between 8-25-05 and 11-06-06 meaning all information related to Court and counselor notes on progress of Davis throughout his participation, all Judge's notes to do with bi-monthly visits.

Date: August 31st, 2007

*Scott W. Davis*

Scott William Davis, In
Propria Persona

Ex. "A"

Name __Davis, Scott__

Case __SCR 32799__

Date __8.25.2005__

# DRUG COURT ORDERS/CONDITIONS OF PROBATION

(L21) ___ Defendant is accepted to participate in Drug Court Program

(G1) ___ Imposition of judgment suspended.

(X1) ___ On **CONDITIONAL SENTENCE** to the Court for eighteen (18) months.

(X23) ___ Complete minimum 9-month Drug Treatment Program.

(X2) ___ Be of good conduct and abide by all laws.

(X3) ___ Abstain from the use of alcohol and/or drugs.

(X3A) ___ Do not be in places where alcohol is the primary item of sale.

(X24) ___ Do not consume anything containing poppy seeds.

(X4) ___ Do not possess any drugs or drug paraphernalia without a valid prescription.

(X6) ___ Submit to random chemical tests at the direction of your drug counselor.

(X7) ___ Complete a diagnostic evaluation as directed.

(X8) ___ Complete all objectives of your Counseling Treatment Plan.

(X8A) ___ Submit to warrantless seach & seizure of person, property, personal business, vehicle at any time of day

(X8B) ___ or night and residence any time of the day or reasonable hours of the night by any Probation or

Law Enforcement Officer

(Y14) ___ Or Program Representative

(X9) ___ Make all counseling sessions, court appearances, Narcotics Anonymous meetings (or other self-help

meetings) as directed.

(X10) ___ Keep your counselor and the Court advised of your current address and phone number at all times.

(XX) ___ Register as a "controlled substance offender" with either your local police department or Sheriff

pursuant to section 11590 of the Health & Safety Code, and bring receipt to next court appearance.

(X13) ___ Court waives the Drug Program Fee, finding the defendant does not have the ability to pay.

(X14) ___ Court imposes $100.00/$200.00 State Restitution Fine per 1202.4 of the Penal Code. Court finds

(X15) ___ compelling and extraordinary reasons to waive fine as follows: Defendant ordered to pay

(X16) ___ weekly counseling fees for a 9-month Drug Treatment Program. Any court ordered payments shall be

(X17) ___ directed to those counseling fees.

X20 ___ To serve _____ months county jail, execution of sentence stayed pending successful completion of

probation.

(X21) ___ Report **immediately** to:

DRUG COURT TREATMENT CENTER

2230 Professional Drive, C

Santa Rosa, CA

(X22) ___ Test as directed at Orenda Center

(Y27) ___ Defendant agrees to all terms and conditions of Probation

_____

**Judge of the Superior Court**

Defendant's Signature __Scott Davis__

Address _____

City _____ St _____ Zip _____

CtClks-3 (Revised 9-15-2003)

000035

Ex 'B'

SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF SONOMA

PEOPLE OF THE STATE OF CALIFORNIA,
                                        Plaintiff,

CASE NO.  SCR  32799

vs.

DRUG COURT AGREEMENT

Scott Davis          Defendant/

I agree to give up the following rights and to carry out the agreements listed below and as explained in the "Notice to Participants".

1.  To enter the Drug Court Program, I understand I will plead guilty to a certain charge or charges. The Judge will put me on probation for eighteen (18) months and will impose a jail sentence. The Judge will then stay or delay my jail sentence so that I can successfully complete the treatment program.

2.  I understand that as I plead guilty I will give up my right to a speedy jury trial or court trial. I will also give up my right to remain silent or to testify on my own behalf. I also give up my right to see, hear, and cross-examine the prosecution's witnesses or to call witnesses on my behalf.

3.  I also understand that any time within **fourteen (14) days from today** I can withdraw from the Drug Court Program by telling the Judge that I don't want to participate in the Program. Likewise, the Judge may also terminate me from the program during the first fourteen (14) days. If either happens, my not guilty plea will be re-entered and my case will be transferred back to a criminal department.

4.  I agree to complete a diagnostic evaluation in order to design my individual treatment program. I authorize the release of all treatment information to the Court and to Drug Court personnel. This information cannot be used by the District Attorney to prosecute me, but it can be used by the Court to see how well I am doing in the program.

5.  I understand that this is a minimum nine (9) month *intensive drug treatment program.* It will include individual counseling, group counseling, urine testing, designated self-help meetings, and constant review by the Drug Court Judge. I agree to complete all objectives in my personal "counseling treatment plan."

6.  I understand that I will have to appear in court on a regular basis and will be personally accountable for my progress in the Drug Court Program. No attorney will speak on my behalf. *I will speak for myself and speak directly to the Judge.*



7. I understand that any failure in the treatment program such as missing counseling sessions, missing urinalysis test(s), positive urinalysis test(s), or a new arrest will result in an immediate appearance in front of the Judge. The Judge will then have the option to sanction me for my behavior to include increased treatment and counseling, more court appearances, immediate jail, termination from the program, or other sanctions the Judge deems appropriate.

8. I agree to pay for my counseling as ordered by the Drug Court Judge. If I do not complete the program, I understand that I will not get any money back.

9. I also agree that the Court may extend my probation to give me additional time to complete the counseling program.

10. I agree to keep my counselor and the Judge advised of my current address and phone number at all times.

11. I understand that the Court will order random chemical testing to insure that I am not using alcohol or drugs. This testing is usually done at the Orenda Center, however the Court may, without notice to me, require testing at another location by an outside agency, i.e. treatment providers, the Probation Department or a law enforcement agency.

12. I also understand that if I successfully complete the Drug Court Program the Judge will allow me withdraw my guilty plea and my case will be dismissed, or the Judge will grant such other relief as allowed by law.

I have read my statement of rights and I have read the "Notice to Participants". I also have read the agreements I am making with the Court. I understand what I have read, I give up these rights and I enter into these agreements with the Court.

_____    8-25-05
Defendant's Signature                Date

_____    8-25-05
Attorney for Defendant               Date

_____    8-25-05
Deputy District Attorney             Date

_____    8/25/05
Judge                                Date

00142

1               SUPERIOR COURT FOR THE COUNTY OF SONOMA

2                          STATE OF CALIFORNIA

3                     HON. ROBERT S. BOYD, PRESIDING

4

5          December 19, 2006

6               The proceedings of the afore-mentioned matter

7     came on regularly this day in the Superior Court of the

8     County of Sonoma State of California, before Honorable

9     ROBERT S. BOYD, Presiding.

10              THE PEOPLE OF THE STATE OF CALIFORNIA were

11    represented by JIM SHINE, Deputy District Attorney for

12    the Sonoma County District Attorney's Office.

13              The Defendant, SCOTT WILLIAM DAVIS was

14    represented by JAMIE THISTLETHWAITE, Attorney at Law.

15

16              CHRISTINE L. ARNESON, Certified Shorthand

17    Reporter, was present and acting.

18              The following proceedings were had and taken,

19    to wit:

20              THE COURT:  Let's take the matter of

21    Mr. Davis.  This matter comes on for sentencing on the

22    matter of Scott Davis.  The court has read and reviewed

23    the presentence report.  The court has a long history

24    with Mr. Davis in drug court, and the court would be

25    prepared to accept a recommendation.

1            Counsel wish to be heard?

2            MS. THISTLETHWAITE:  I do, Your Honor, in that

3    the recommendation is the maximum aggravated term.  I

4    have had a chance to sit down and talk with Mr. Davis.

5    Present in court is his mother, who asked for the

6    opportunity to address the court briefly prior to

7    sentencing.

8            Ms. Davis, could you please stand up and

9    identify yourself for the record?  Why don't move up to

10   the bar.  You are going to have to be stand right there

11   and identify yourself.

12           MS DAVIS:  I am Scott's mother, Alece Davis.

13   I am here to say that over the last year and half, two

14   years, Scott has come a long way.  He has really made an

15   improvement and tried very, very hard.  The Scott that

16   we have with us today is not the Scott that we had three

17   or four years ago.  He has really put a good effort into

18   getting himself up, and he has really come forward a

19   long way.  I just -- I really want you to know we really

20   feel he has made such an effort.

21           THE COURT:  Thank you.  All right.

22           MS. THISTLETHWAITE:  Your Honor, I was with

23   Mr. Davis at the initial sentencing in Department No. 1,

24   I believe, in front of Judge Dale at that time.  And the

25   circumstances of the original offense was that Mr. Davis

3

1   was under the influence of alcohol, severely, reached

2   over a counter grabbing some money out of a cash

3   register while the video was running, and then was just

4   stopped.  It was the most unsophisticated crime --

5   spontaneous in its nature, certainly due to the fact

6   that at that point he was under the influence of

7   alcohol.

8          We litigated the matter, and if indeed he

9   would have done the three years, which would have been

10  the maximum aggravated offense at the time, he would

11  have been out in a year and a half, been on parole.

12  What he ended up doing was, according to my records, 14

13  months at Solidarity House.  And I believe when

14  everything was figured out, over 500 days of custody.

15  So we have 14 months of treatment, 500 days of custody,

16  plus and all the time he did in drug court.

17         After speaking with Mr. Davis, he told me that

18  he was trying his best to be -- he started to have

19  emotional problems, which he ended up in Oak Crest --

20  how many times?

21         THE WITNESS:  I went up there on night stay,

22  and I went up there -- it is overnight one time, just

23  checking in because I was having such problems.

24         MS. THISTLETHWAITE:  Considering the

25  circumstances, and what he has tried to do, I am asking

4

1   the court instead of the three years in state prison to

2   consider a Johnson waiver and one year with probation to

3   terminate from this date.  I think that that recognizes

4   the effort he has made and also acknowledges his parents

5   have been supportive and seen a change in him.  His

6   mother here just told the court as well as the

7   circumstances of the original offense, which were

8   extremely, I would think, well-reflected in the charge,

9   666; that is what he did.  He got drunk, reached over,

10  took some money on the video camera.  So I am asking the

11  court to consider one year with probation to terminate.

12          THE COURT:  Mr. Shine?

13          MR. SHINE:  What isn't being talked about is

14  the recommendation is -- I think the recommendation

15  comes to us after such a long time trying to work with

16  Mr. Davis.  And irrespective of what his mother said,

17  maybe he changed in her eyes, but he wasn't changing as

18  far as drug court goes.  I have been doing drug court

19  for 14 or 15 months, and he predated me.  We spent a

20  long time with him trying to do tons of stuff, and he

21  just was recalcitrant or unable to comply.  I think with

22  what his record is that the three years is an

23  appropriate sentence.

24          MS. THISTLETHWAITE:  If I could respond.  I do

25  not believe that this is an aggravated case where the

00146

1   three years would have been even appropriate at the time

2   of sentencing.  As I said, if he got that, he would have

3   been long done.  Mr. Davis has told me -- this is what

4   he is telling me -- he completed all the paperwork and

5   was three weeks shy of graduating when he finally kind

6   of went over the edge.  Now, I am hoping that is true.

7   Mr. Davis is giving me that information.  I don't know

8   if it could be confirmed; but when Mr. Davis was having

9   these problems, he was calling me, and I was telling him

10  to hang in there, because I thought, of course, it would

11  be best for him.  He was emotionally unable to do it,

12  but he did give it what I consider an effort because he

13  was certainly in this program for a long time.

14          So I am still sticking with my original

15  request for the court to consider a Johnson waiver with

16  one year in the county jail, which would give him

17  basically over two actual years in custody more than he

18  would have done, probably close to three actual years in

19  custody on this case at this point.  I submit it.

20          THE COURT:  Thank you.  The Court has read and

21  reviewed the presentence report and appreciates the

22  comments the Court has heard.  In going through the

23  history, I see back in March of '04 when -- I didn't

24  realize it was Judge Dale, but I will accept that,

25  execution of sentence suspended.

6

00147

1          Mr. Davis, while you have been -- since March
2    '04, you have known that if you were not able to
3    complete the program that is what you were going to be
4    facing.  I see you were sent to Solidarity House, and
5    after that you picked up a new drug charge, 11550, came
6    into our drug court program, and they there were five
7    violations of the drug court policy.  And then upon that
8    fifth violation, your indication was you didn't want to
9    do the program, didn't want to do drug court, not
10   interested in any more programs.

11          So, unfortunately, it sounds like you have
12   given up on yourself, which I find disturbing, because I
13   think through the drug court process, I think you
14   learned a lot.  I hope it stays with you.  But at this
15   point, the information you gave probation, you are
16   simply not interested in any program, so it comes to the
17   court then with a suspended sentence.

18          So the Court -- I am going to go ahead and
19   impose the suspended sentence.  Life is not over.  You
20   are going to be getting out.  You do have credits we
21   will talk about in a minute.  I hope you can use some of
22   the tools you learned in drug court to your advantage
23   when you get out of CDC, because for a while you were
24   doing fine, and then you just couldn't stay with it.
25   There are issues you need to deal with, emotional issues

7

00148

1   I hope you get some help on.

2           At this time, probation is revoked.  You're

3   committed to the Department of Corrections,

4   rehabilitation for the term of three years.  You are

5   ordered to pay restitution to the victim, Sonoma Joe's

6   Sports Bar and Casino in the amount of $311.85, pursuant

7   to Section 1202.4 of the Penal Code, to be collected by

8   the Department of Corrections.  You are ordered to pay a

9   restitution fine in the amount of $600 to be paid in a

10  manner to be determined by the Department of

11  Corrections.

12          You are ordered to pay an additional

13  restitution fine pursuant to Section 1202.45 of the

14  Penal Code in the same amount as that imposed to the

15  victim.  This additional restitution fine shall be

16  suspended unless your parole is revoked.

17          You have been convicted of a felony.  You may

18  not own, or have in your possession or under your

19  custody or control any firearm or ammunition.

20          And as for credits, accepting the calculation

21  by probation, you have 192 days for custody --

22          MS. THISTLETHWAITE:  As of December 13, he had

23  198 custody, 98 conduct credits, for a total of 296

24  days.

25          THE COURT:  Those will be your credits.

00149

1    MS. THISTLETHWAITE: Mr. Davis was asking you

2    to consider giving him credit for the time that he did

3    in drug court under 2900.5.

4    MR. DAVIS: Yes.

5    THE COURT: That is an out-of-custody program,

6    so I don't believe it would be appropriate for me to

7    that.

8    You do have a right to appeal the sentence.

9    If you wish to file an appeal, you may file a written

10   notice of appeal with the clerk of this court within 60

11   days of today. If you are unable to hire an attorney,

12   the appellate court will appoint an attorney to

13   represent you. If you do appeal, you have a right to a

14   free transcript and necessary records of the court.

15   Written notice of appeal must be timely filed within 60

16   days of today.

17   Mr. Davis, you still have a life. You know,

18   time goes by, and whatever issues you have, deal with

19   them, take care of them. I don't want to think you have

20   given up on yourself.

21   THE WITNESS: I think I gave it an effort,

22   though, Your Honor. We are talking about, you know, not

23   to make a felony light, it is one of the lightest

24   felonies, petty theft with a prior, and I do 31 months

25   rehabilitation -- seven more months than someone who

00150

1   went to Delancy Street.   I have some problems, I go to

2   Oak Crest, and you say because I don't want to

3   participate --

4           THE COURT:   I am only concerned about your

5   future.   I really want you to get whatever help you

6   need.   It is out there.   Apply for it, ask for it and

7   get it when you have a chance.   I don't want to see you

8   back in our courts again.   That will be the sentence.

9           (Proceedings concluded.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

00151

```
 1                    REPORTER'S CERTIFICATE

 2   COUNTY OF SONOMA              )

 3                                 )  ss.

 4   STATE OF CALIFORNIA           )

 5

 6        I, CHRISTINE L. ARNESON, CSR #1690, a

 7   certified court reporter in and for the County of

 8   Sonoma, State of California, do hereby certify that the

 9   foregoing Pages 1 through and including 10 comprise a

10   true and complete transcript of the proceedings reported

11   by me on December 19, 2006, in the foregoing matter.

12

13

14        Dated this 16th day of January 2007.

15

16

17

18        _____

19          Christine L. Arneson, CSR #1690

20

21

22

23

24

25
```

# *MEMO*

HEARING DATE: 08/11/05

FILING DATE: 08/08/05

DA File No. 457013

PD File No. 307770

**RECEIVED**
BUT NOT FILED

JUL 1 8 2005

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

DATE:        July 15, 2005

TO:        HONORABLE CERENA WONG, Judge of the Sonoma County Court

FROM:        Gina DiGiacomo, Deputy Probation Officer

SUBJECT:        TREATMENT UPDATE

RE:        DAVIS, SCOTT WILLIAM    Court Case No. SCR-32799    Probation File No. 77484

ATTORNEY: Ande Thomas, Deputy Public Defender

CASE SUMMARY:
On July 08, 2005 the defendant was in Court regarding a violation of probation, based upon possession of drugs and being under the influence of drugs. The matter was continued until 08/11/2005 for sentencing. TASC has provided further information regarding treatment.

TREATMENT STATUS:
The defendant was screened and accepted into TASC on 07/06/05. According to Jerry Knoakes, TASC case manager, the defendant "admits to having a drug problem and is ready to change his life. TASC is recommending that he attend the 30 day Residential program with 6 months of outpatient follow up. Ths will include further drug testing, involvement in NA/AA, be gainfully employed and make all of his appointments. It is my recommendation that he stay incarcerated until bed-space becomes available. It is my hope that the Court will grant Mr. Davis this opportunity to do something about his addiction."

CREDIT FOR TIME SERVED:

| | |
|---|---|
| 02/07/03: | Hold placed on defendant in Sacramento County. |
| 03/11/03: | Warrant arrest |
| 12/19/03: | Released on bail |
| 01/12/04: | Defendant entered treatment at Solidarity House. |

Ex. E

SCR-32799    SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA    Page 13

08/25/2005 DE 1    Courtroom Minutes of Department 15    (continued)
    Totally abstain from use of alcohol/drugs
    Stay out of places where alcoholic beverages are the primary item
    of sale
    Do not consume anything containing poppy seeds
    Not to possess any drugs or drug paraphernalia without valid
    prescription
    Submit to random chemical tests at the direction of your drug
    counselor
    To complete a diagnostic evaluation as directed
    To complete all the objectives of your ^counseling treatment
    plan^.
    Submit to warrantless search and seizure of person, property,
    personal business or vehicle at any time day or night;
    Or Program representative.
    Make all counseling sessions, court appearances, Narcotics
    Anonymous meetings, or other self help meetings as directed
    To keep your counselor and the court advised of your current
    address and phone number at all times
    Court waives Drug Program Fee, finding that defendant does not
    have ability to pay
    Court finds compelling and extraordinary reasons to waive fine as
    follows:
    Defendant ordered to pay weekly counseling fees for 9-month drug
    treatment program
    Any court ordered payments shall be directed to those counseling
    fees
    Test at Orenda Center
    Defendant agrees to all terms and conditions of Probation.
    CONTINUED TO - 09/01/2005 at 2:00pm 15, FOR REVIEW

09/01/2005 DE 1
    OR FEE TO APPLY

09/01/2005 DE 1    Courtroom Minutes of Department 15

    HON: Robert S. Boyd  DDA: PHILLIP J. ABRAMS  CLK: MB
    Defendant present
    Remanded into custody
    NO BAIL
    CONTINUED TO - 09/08/2005 at 2:00pm 15, FOR REVIEW

09/06/2005 DE 1
    AUTOMATED 8715 SUBSEQUENT ACTION ISSUED

09/08/2005 DE 1
    OWN RECOGNIZANCE AGREEMENT TO APPEAR FILED