1 | Scott W. Davis, Pro Se

2 | CMC-West/ P.O. Box 8103

3 | Unit 1/Dorm 10/Bed 44 Up

4 | San Luis Obispo, CA. 93403-8103

*Filed*

~~RECEIVED~~

DEC 2 6 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT W. DAVIS, an individual ) | **Case No:** C-07-5314 CW (PR) |
| ) | "FIRST_AMENDED_COMPLAINT" |
| Plaintiff. ) | JURY TRIAL DEMAND; F.R. Civ. P 38(b) |
| vs. ) | |
| ) | 1) VIOLATION OF ESTABLISHMENT CLAUSE |
| DRUG COURT TREATMENT CENTER, ) | PURSUANT TO TITLE 42 U.S.C. §1983 |
| ) | |
| Individuals Debbie Pope, Counselors ) | 2) DENIAL OF PROTECTED RIGHTS UNDER |
| Bill, Debbie, and Tommy, et.al. ) | CALIFORNIA LAW |
| ) | |
| ) | 3) VIOLATION OF FREE EXERCISE CLAUSE |
| And DOES 1-10 inclusive ) | 4) BREACH OF CONTRACT |
| ) | |
| Defendants. ) | Amount demanded: $1,700,000 |

### STATEMENT OF CASE

PLAINTIFF contends the mere fact of his brief pre-sentence attendance designed to demonstrate his commitment to rehabilitation, did not amount to a consent to the aspect of the sentence that essentially required him to attend religious exercises. Plaintiff alleges defendants did not offer an alternative to NA/AA as in meaning, secular meeting. Plaintiff believes any waiver of rights is not valid due to DAVIS being in Drug Court illegally per POS1210.1. Plaintiff is also claiming these issues above contribute still to violation of Free exercise until release. Conviction is not being disputed here. Defendants forced N.A./A.A. participation

1

### STATEMENT OF CASE (cont.)

This instant action arises from  the unlawful and premeditated constitutional violations perpetuated by the Drug Court Treatment  Center (D.C.T.C.) Sondia County Probation Department (S.C.P.D.), and  Administration and County Alcohol & Drug Program (ACA & D.P. ·).  Plaintiff was coerced and forced to attend NA/AA meetings under threat of consequences of getting kicked out of Drug Court and sent to prison for failure to go to at least five NA/AA meetings a week.  Plaintiff was still threatened after notifying Drug Court Counselors and Drug Court Judge that participation in those meetings were very uncomfortable because it was forcing him to participation in actions contrary to his religious beliefs.  The named defendants above actions amounted to establishment of religion prohibited by First Amendment and blocking his own religious practices.  Plaintiff now brings this action in an effort to seek relief from prejudicial persecutions carried out under color of law.

### PARTIES

#### 1.

Plaintiff SCOTT WILLIAM DAVIS (SCOTT W. DAVIS) is an adult male and a resident of the County of Sonoma, State of California.

#### 2.

Defendents SONOMA COUNTY PROBATION DEPARTMENT, D.C.T.C., Staff of D.C.T.C. , and A.C.A. &D.P.  They are within the boundaries of the Northern District of California, as are the individual defendants DEBBIE POPE, and Counselors 'Bill', 'Debbie', and 'Tommy'.

#### 3.

Plaintiff is ignorant of the true names and capacities of defendants' sued herein and therefore sues these Defendants by such Jane Does and John

1   Does.  Plaintiff will amend this complaint to allege their true names and

2   capacities when ascertained.  Plaintiff is informed and believes and thereon

3   alleges that each of these fictitiously named Defendants is responsible in

4   some manner for the occurrences herein alleged, and Plaintiff injuries as

5   herein alleged were proximately caused by the aforementioned Defendants. The

6   Plaintiff is informed and believes and thereon alleges that each of the

7   Defendants' herein was, at all times relevant to this action, the agent, the

8   employee, representing partner, supervisor, managing agent, or joint venturer

9   of the remaining Defendants and was in action within the scope of that rela-

10  tionship.  Plaintiff is further informed and believes and thereon alleges that

11  each of the Defendants herein gave consent to, ratified, and authorized the

12  acts alleged herein to each of the remaining Defendants.  Defendants are sued

13  both in their own right and on the basis of respondeat superior.

14                           **JURISDICTION  AND  VENUE**
                                        4.
15          Jurisdiction of this action is conferred upon this court by 42 U.S.C.

16  §1983, 42 USC §1985(3) which gives the right to a cause of action for conspi-

17  racy which deprives a citizen of the United States of any right or privilege;

18  the First, Fourth, Fifth, Seventh, Eighth, Ninth, and Fourteenth Amendments

19  to the Constitution of the United States.  The court is requested to assume

20  control of the collateral state claims under the doctrine of pendent juris-

21  diction as the claims arising thereunder involve the same actions and set of

22  circumstances.  See e.g. Uhl v. Ness City, Kansas, 406 F.Supp. 1016 (D.C.

23  Kansas 1975), affirmed 590 F.2d 839.  28 U.S.C. 1331; 1338; The federal

24  question statutes.  This Court further has supplemental jurisdiction over

25  Plaintiff's state law claims under 28 U.S.C. 1367(a) and Savage v. Glendale

26  Union High School Dist. No. 205 (9th Cir.) 2003.

27                                      5.

28          Venue over Defendants is proper as Defendants reside in the Northern

District of California, and at times relevant to this action, Plaintiff has

resided in the Northern District of California.  Thus venue is proper under

28 U.S.C. §1391.  This civil action is requested to commence in San Fran-

cisco District Court via the intradistrict assignment.

**FACTS**

6.

Plaintiff was sentenced by Robert S. Boyd, Dept. 15, in Sonoma County

Superior Court, State of California, on 8-25-05 to Drug Court after a vio-

lation of probation.

7.

Plaintiff was in Drug Court until 11-06-06 when he was dropped  for

a supposed lack of interest in program.

8.

Plaintiff would state this is partially right, he did have a interest

in not continuing because he was subjected and coerced to attend NA/AA

meetings while at Drug Court.  Sometime between December 2005 and February

2006, plaintiff let his counselor 'Bill' know and other  counselor 'Debbie'

(while she filled in for plaintiff's counselor)     that he was offended

by the way NA/AA was operating in the Sonoma County Chapter.  That it went

against his religious beliefs (Baptist) and was offensive in many ways.

When plaintiff tells her and    staff, he is told to continue meetings or

be kicked out of program and be put in prison.  Plaintiff complies reluc-

tantly becuase of threats. Plaintiff starts to get bad reports now.

Plaintiff subsequently goes higher in rank in Drug Court to voice his

concerns and beliefs to try to come to a solution to problems with NA/AA

clashing with personal religious beliefs.

9.

Plaintiff talks to counselor "Tommy" who is supervisor of 'Bill' and

1  "Debbie'. Plaintiff tried to explain how offensive NA/AA is here in Sonoma County.

2  Plaintiff describes how counselors ridiculed him over religious beliefs opposed to

3  NA/AA. Plaintiff tells 'Tommy' of how they accuse him of not being serious. DAVIS,

4  the plaintiff here, tells 'Tommy' of wanting to focus on church instead, that this

5  is a type of God he does not follow. Also the Big Book and its concept of working

6  steps to find God to help you with addiction is uncomfortable. One of the most

7  offensive things is working with a sponsor to tell you how to work the steps and

8  interact with God, which is foreign and offensive also. DAVIS explains in this

9  meeting and others how NA/AA with references to God are offensive and opposite of

10  his church teachings. The closing with the Lord's Prayer with people in NA/AA was

11  wrong in plaintiff's religious beliefs, because some have no belief in Jesus.

12                                          10.

13  Plaintiff was met with some hostility as before and told, "You didn't come here

14  to go to church, go to prison if you don't like it." He again, complies reluctant-

15  ly because of threats. Bad reports continue on plaintiff.

16

17  Judge Boyd becomes aware of these issues at regular visits to Drug Court Dept.

18  15. Judge Boyd asks plaintiff what his problem is concerning going to meeting.(NA/

19  AA) Plaintiff tells Judge that it clashes with his religious beliefs. Judge Boyd

20  replies, "Do what you're told", in a stern tone and excuses plaintiff from court.

21  (Plaintiff had updates every two weeks)

22                                          12.

23  -   . Again, plaintiff is receiving a lot of flack accusing him of not being serious

24  about recovery. Plaintiff is then directed to go to **more hard core meetings such as**

25  **"Step Study Meetings"** and to find a sponsor and work **"first three steps"** or he can-

26  not graduate. These actions put a lot of pressure on plaintiff because 'Step Study'

27  meetings are more spiritually intense than regular meetings.

28  //

13.

On March 9th, 2006, the plaintiff is so upset and stressed out over these meetings that he is admitted for an overnight stay a mental health facility (Oakcrest). Plaintiff gets a little counseling and proceeds back to same situation dealing with Drug Court staff still resenting the fact that plaintiff does not embrace their beliefs in NA/AA. See Ex.M

14.

Some months later "Davis" is told to do 90 days and 90 meetings, at this point this is effecting plaintiff's attendance at church. Plaintiff was attending morning services at Baptist Church in Santa Rosa and six p.m. in the evening. Plaintiff now cannot have a day of rest to worship, a Baptist rule and tradition. Plaintiff believes now that free exercise of religion is violated at this point, but was confused as how to deal with it at that time. (Plaintiff has no driver's license)

15.

At this point, Davis tries to address everything with D.C.T.C. Director directly. Plaintiff Davis gets a meeting with Director Debbie Pope at her Farmers Lane Office. Plaintiff discusses all his beliefs and issues he had with counselors concerning religious beliefs. The meeting ends with Pope stating, she would talk to counselors, but insisted half the problem was with the plaintiff. Davis was reluctant at this point to disagree on the religious issues because of previous threats. Plaintiff believes that at this juncture that all remedies possible were exhausted based on the fact he had voiced his concerns from Judge on down.

Plaintiff could only talk to the Psychiatric Technician (Allison) who worked part-time at Drug Court in One-on-One Counseling Sessions that were "confidential". Allison helped DAVIS for a time but ultimately in the future AA/NA stress started to drive DAVIS back to Oakcrest again.

16.

Some weeks later again Plaintiff was told to complete the first three steps of the NA/AA Program or he would not graduate. Plaintiff believes he can no longer comply with the program and is now faced with a dilemma of faking or lying to Drug Court of working these steps with his sponsor. For plaintiff to work these steps with his sponsor in the tradition of NA/AA a type of spirituality/program, in essence another man telling plaintiff how to worship God in his daily life (**exactly opposite of his Baptist beliefs**).

At a certain point in time, plaintiff's counselor 'Bill' forced plaintiff to read the Big Book. This also occurred with Supervisor 'Tommy' who had the plaintiff doing daily readings out of the Big Book when 'Tommy' eventually became plaintiff's counselor. The Big Book has the 12 Steps.

18.

Plaintiff stalls on this because he does not want to lie or be forced to break religious beliefs, or end up in oakcrest again as before plaintiff informs Judge Boyd he does not want to continue because he does not want to lie or break Church doctrine. Plaintiff had missed a test at this time also. After missing this test the plaintiff was thereafter imprisoned.

After plaintiff tells Judge Boyd he does not want to continue because of his religious beliefs conflicting with NA/AA religious doctrine, Judge Boyd tells DAVIS to think about it. Plaintiff has hoped Judge Boyd and counselors would show some kind of mercy towards him because he did do over 14 months there and the fact plaintiff was forthcoming with what was going on with him in regards to meetings. Plaintiff thought he did show he was serious about recovery by sticking it out and not running or lying as others had done while he had attended Drug Court. This was not to be though. Usually a violation for a missed test is 1-2 weeks incarceration, but due to DAVIS continueing to object NA/AA , Plaintiff was dropped from Drug Court on 11-06-06 and was violated over

19.

1    Poor performance and lack of interest.  The court stated, RF. EX. "C",

2    Plaintiff believes they carried out their promised threats.  By giving Judge

3    false information on DAVIS due to religious objections.

4        Petitioner also alleges that a substantial part of Drug Court (Drug

5    Court Treatment Center, hereafter as D.C.T.C) classes were connected to NA/AA

6    meetings.  We had Step Study meetings and videos relating to NA/AA groups.  In

7    essence (**NA was 95% of program**), which was not made clear in beginning.  The

8    talks of a higher power and studies on higher power permeated D.C.T.C. peer

9    group meetings and classes.  There were usually 2 to 3 meetings like this to

10   attend at D.C.T.C. offices on top of mandatory 5 NA/AA meetings per week.

                                    20.
11   Plaintiff was also paying fees for his rehabilitation.  Refer to con-

12   tract, Exhibit 'B', page two number 8.  Plaintiff was told of      attendance

13   of NA/AA not indocrination of all other requirements that was put on him. Before

14   joining D.C.T.C., DAVIS, had a brief look at a list of requirements that are

15   listed in Exhibit D.  Plaintiff's quick overall view of these requirements did

16   not make clear to him all that D.C.T.C. required. SEE contracts Ex.A,B also

17   It looked as there was much more to program than just being about ninety-five

18   (95%) NA/AA.                         21.

19       One of the most important events that transpired was in the beginning

20   on 8-25-06, when Debbie Pope the Director of D.C.T.C. pre-screened DAVIS at

21   jail, when asked by Judge if DAVIS fit criteria, her reply was yes (not until

22   after plaintiff was forced out of D.C.T.C. because of religious intolerance,

23   and sent to prison did DAVIS find out he was there illegally per PC §1210.1.

24   All defendants set back and said nothing.

25       In addition, plaintiff was coerced at NA/AA meetings to contribute a

26   donation to the operation of the meetings, part of their SEventh Tradition.

27   This takes place at every meeting.  Sometimes plaintiff gave reluctantly and

28   other times he had to defend himself as to why not contributing to the basket

1    Plaintiff had fourteen day trial period but in reality DAVIS
2    was stuck from beginning because of Judge Wong's statements that if
3    defendant appeared before her again, she would send him to prison
4    (refer to transcripts, Exhibit "K", dated August 16th, 2005), where
5    she states on page nine, line 3-4, "You come back here, and Mr. Davis
6    is going to prison." These statements locked DAVIS so to speak into
7    D.C.T.C., no matter what happened there. There was no real choice for
8    DAVIS. He could not even look ahead of time into what he was getting
9    into.

10    Finally, we have DAVIS after getting kicked out of D.C.T.C. on
11    11/06/06 having a chance if D.C.T.C. and Probation let him get another
12    program. Penal Code §1210.1 (5)(3)(1) "states" if the Drug Treatment
13    provider (D.C.T.C. in this case) notifies the Probation Department that
14    defendant (meaning DAVIS in this context) is unamenable to the drug
15    treatment provided but maybe amenable to other treatment or related
16    programs, the probation department may move the Court to modify the
17    terms of probation to ensure that the defendant receives the alterna-
18    tive treatment of program.

19    This did not happen for plaintiff. DAVIS believes it goes back
20    to original accusations from D.C.T.C. staff after DAVIS proclaimed his
21    religious beliefs. They accused him of not being serious about
22    recovery because of religious clash between AA/AA and religion. There
23    is no other reason DAVIS can think of for these actions.

24    Penal Code §1210.1 (5)(3)(2) states if at any point during the
25    course of drug treatment the treatment provider notifies the probation
26    department that the defendant is unamenable to the drug treatment pro-
27    vided and all other forms of drug treatment programs to subdivision (b)
28    of section 1210 of the Penal Code, the probation department may move to

1  revoke probation.  <u>At the revocation hearing</u>, if it is provided that the
2  defendant is unamenable to all drug treatment programs pursuant to sub-
3  division of section 1210, the Court may revoke probation.  DAVIS beleives
4  and alleges D.C.T.C. recommended to probation that DAVIS was not suitable
5  for any other program over their bias and unlawful reasons.  DAVIS believes
6  this will play out in discovery.Davis never had revocation hearing.

7       Plaintiff has many witnesses to these violations in this suit and
8  will be amended when these John Does and Jane Does witnesses will be
9  named by the plaintiff when their full names are available.

10       Additionally, plaintiff claims D.C.T.C. compelled D.A. to go after
11  him at sentencing even when the terms of contract stated information from
12  D.C.T.C. may not be used in a prosecutorial fashion.

13       Plaintiff was sentenced on 12-19-2006, and District Attorney used
14  information supplied by D.C.T.C. (refer to Sentencing Transcript, marked
15  Exhibit "C", page 5, lines 12 to 23).  A violation of Drug Court Treat-
16  ment contract    signed by all parties (refer to Exhibit "B", page 1,
17  marked number 4 which states, **"I agree to complete a diagnostice evalua-**
18  **tion in order to design my individual treatment program.  I authorize the**
19  **the release of all treatment information to the Court and to Drug Court**
20  **personnel.  This inofrmation cannot be used by the District Attorney to**
21  **prosecute me, but it can be used by the Court to see how well I am doing**
22  **in the program."**  (D.C.T.C. supplied info.)

23       Even though the District Attorney and D.C.T.C. agreed in contract
24  no to use any information in Drug Court Treatment against Plaintiff in a
25  prosecutorial fashion, they did so none-the-less at plaintiff's sentencing
26  hearing on 12-19-2006.  The District Attorney states at the Sentencing
27  Hearing the following: (Refer to sentencing transcripts, page 5, lines
28  10-23). A clear violation of Drug Court Contract See Ex.B to confirm

10

After DAVIS was already in prison, plaintiff attempted for justice. And, so DAVIS also wrote a letter to Judge Boyd asking him to reconsider his sentence, because DAVIS felt Judge was lied to by D.C.T.C. and S.C.P.D. on the subject of DAVIS not being interested in any program when in reality DAVIS was working with T.A.S.C. again as before prior to being placed in Drug Court on 8-25-05. (Refer to memo, Exhibit "E").

Under the law DAVIS knew the Judge could recall a sentence up to 120 days after sentencing for whatever reason Judge wants to. In the letter DAVIS sent to Judge DAVIS describes in detail how he was working with T.A.S.C. at time of sentencing and that Judge did not have proper infor- mation from probation and D.C.T.C. DAVIS based this on Judge's comments of DAVIS not wanting to do anymore programs (refer to Exhibit "C", senten- cing transcripts, page 7, lines 9-10).

DAVIS received a letter back from Judge dated February 27, 2007, , where Judge Boyd states he along with Debbie Pope recalled that "DAVIS did not want to continue and wanted to do his time." Again, defendants still show bias with untrue statements. DAVIS had told her in Court in front of many witnesses he still wanted to continue with some kind of rehab, and the fact that he was working with T.A.S.C. again who notifies probation and D.C.T.C. when they are working with someone. DAVIS alleges D.C.T.C. still held grudge because of his stand on religious beliefs. Another person also was treated badly because of religious beliefs.

DAVIS also heard Judge Boyd at sentencing acknowledge plaintiff's stress and emotional issues (refer to Exhibit "C", page 7, line 25, and page 8, line 1), but believes Judge overlooked plaintiff's concerns over AA/NA, stress and mental health issues due to some behind the scenes dirty pool by defendant Pope and D.C.T.C. staff. Plaintiff believes discovery might bring to life what was really going on behind the scenes.

1    Judge and defendant D.C.T.C. along with Sonoma County agency (Criminal Court

2   Clerk) are thwarting all attempts of plaintiff to secure Drug Court file, meaning all

3   counselor notes, progress reports, Judge's notes, etc.  Most notably, the Sonoma County

4   Criminal Clerk has refused several attempts by plaintiff to secure these records.  The

5   plaintiff had tried to use the Freedom of Information Act for Habeas Corpus and this

6   suit action.See Ex.R and  also tried to retrieve these records on direct appeal with

7   an attorney with no avail.  At one point the sentencing Judge Boyd respond to letter

8   sent specifically to Criminal Court Clerk of Sonoma County, this raises suspicion of

9   Judge Boyd trying to intervene when plaintiff never wrote to him concerning this file

10   because it is a specific duty of criminal clerk to send this record under the law.

11    When Judge Boyd sentenced DAVIS on 12-19-06 (see sentencing transcripts, exhibit

12   "C", page 7, lines 8-12).  You can see Judge states plaintiff did not want to do Drug

13   Court anymore or anymore programs.  DAVIS alleges this is not true, he was not closed

14   to attending another program without NA/AA.  That's why he was working with T.A.S.C.

15   again and told Probation Department in interview at jail, he still needed counseling.

16   See attached probation interview, dated December 13th, 2006, marked Exhibit "Q", page

17   3, lines 16-17. Also in interview you can see plaintiff had talked to his

18   counselor Tommy on jail phone before getting kicked out of D.C.T.C.davis

19   recalls conversation to probation.Tommie tells Davis he is burned out

20   because of the amount of total program time davis has 31 months in all.

21   See Ex.Q pg.3 lines 8-11.Davis believes this was some type of ploy by

22   tommy to get him sent to prison,for he   . knew if he did not continue in

23   some type of rehab.he would get sent to prison.Davis based this on info-

24   rmation given to him by afriend connected to D.C.T.C. who visited him at

25   jail and told davis they would send him to prison if he did not seek a

26   more rehab.DAVIS was told not to quit completely just because of NA/AA

27   To keep focused on some type of rehab,So he would not go to prison. This

28   DAVIS found out after talking to 'Tommy' and probation.

1 | DAVIS never gave up, and thus in the end Davis tried to work with
2 | Jerry Knokes of T.A.S.C. to find a solution before sentencing on
3 | 12/ 19/ 06, Judge, DCTC never mentioned these facts.
4 | 22.

5 | Plaintiff is now currently at CMC-West in San Luis Obispo, California,
6 | serving out a 3 year sentence for Petty Theft with a Prior, because of
7 | religious intolerance that caused poor performance reports    The
8 | plaintiff sums up the whole episode as to being forced to attend NA/AA as
9 | compared to someone being forced to attend a Mosque, Mormom Church, or a
10 | Jehova Witness, meeting, you work out of their different books and practice
11 | what they practice. That is how uncomfortable that plaintiff was in this
12 | situation. Plaintiff to be released on 1-26-2008.

23.

### LEGAL CLAIMS

14 | The facts related above disclose a concerted and systematic effort by
15 | the defendants to deprive the plaintiff of his constitutionally secured
16 | rights, but not limited to, those enumerated in the succeeding
17 | paragraphs.

18 | 42 USC §1983, states:

19 | Every person who, under color of any statute, ordinance, regulation,
20 | custom, or usage, of any State or Territory, subjects, or causes to be
subjected, any citizen of the United States or other person within the
jurisdiction thereof to the deprivation of any rights, privileges, or
21 | immunities secured by the Constitution and laws, shall be liable to the
party injured in an action at law, suit in equity, or other proper
22 | proceeding for redress.

23 | 42 USC §1985(3)

24 | Which gives the right to a cause of action for a conspiracy which
25 | deprives a citizen of the United States of any right or privilege; the First,
26 | Fourth, Fifth, Seventh, Eighth, Ninth and Fourteenth Amendments to the Con-
27 | stitution of the United States.

28 | Equal rights under the law.  42 USC §1981

1    Conspiracy to interfere with civil rights 42USC §1985.

2    Freedom from violence or threat of violence because of protected characteristics.

3    Cal. Civil Code §51.7.

4    Protection from interference with rights by threats, intimidation, coercion, or

5    violence.  Civ.Code §52.1.

6    **FIRST CAUSE OF ACTION**

7    Violation of First Amendment Right (Establishment Clause)

8    **(42 U.S.C. §1983, et seq.)**

9    Plaintiff incorporates by reference the allegation contained in paragraphs 1-23

10   as though fully set forth herein.

11                          24.

12   Defendants willfully and/or with reckless indifference violated the above enum-

13   erated statutory and constitutional rights of the Plaintiff when they wantonly dis-

14   criminated against the Plaintiff by conducting a clearly violative and unlawful

15   procedure to force plaintiff to attend NA/AA religion based programs.  Plaintiff

16   relies first on Lee v. Weismen (1992) 505 U.S. 577 for the proposition that the gov-

17   ernment may not coerce anyone to participate in religion or its exercise.  This is

18   exactly what happened to "Davis", the plaintiff, in the case at bar.  As stated,

19   plaintiff was told after complaining of NA/AA meetings being offensive and conflicting

20   based on religious beliefs.  D.C.T.C. Staff counselors, Director told plaintiff to

21   continue or there would be consequences, so as getting kicked out and going to prison.

22                          25.

23   In Warner v. Orange County Dept. of Probation (1997), the Court found sending

24   Warner to AA as a condition of probation without offering  a choice of other pro-

25   viders, plainly constituted coerced participation in a religious exercise ( a viola-

26   tion of the Establishment Clause) the Court stated.  Plaintiff contends same here.

27   Over 14 months of voicing his concerns over NA/AA being offensive and conflicting with

28   his religious practices.  The injury to plaintiff was enormous unlike in Warner, the

threatened consequences were carried out.  Remarkly, even after the stress of coer-
cion drove plaintiff to an overnight say at a mental health facility.

26.

In <u>Warner</u>, the Court used the three-part test of <u>Kerr</u> v. <u>Farrey</u> (7th Cir. 1996)
95 F.3d 472.  First: As to the requirement of the state action, B.P.T. told Kerr
he had to participate in N/A to parole.  <u>Plaintiff has same type of action, D.C.T.C.</u>
<u>and Drug Court Judge still compelling plaintiff to continue regardless of religious</u>
<u>objections.</u>  The Second test: Does the action amount to coercion?; as in <u>Kerr</u> who
was told he would never parole.  <u>Plaintiff was told he would never graduate if he</u>
<u>did not continue with NA/AA meetings.</u>  The third test in <u>Kerr</u>:  Was the coercion
religious, because of the NA/AA reference to God necessarily implied a spiritual
system of worship?  The Court in <u>Kerr</u> followed Second Circuit in <u>Warner</u> accordingly
and Seventh Circuit <u>Kerr</u> (supra) to hold requiring participation NA is an Establish-
ment of Religion prohibited by the First Amendment.  Which is exactly what happened
in plaintiff's case.

27.

Plaintiff being told after notifying D.C.T.C. and Drug Court Judge of uncomfor-
table conflict in religious aspect, should have honored contract he signed with them
and let him do something else instead of trying to force plaintiff into the deeper
aspects of NA/AA program by forcing Big Book (AA) and a requirement of First Three
Steps to be done with a sponsor before he could graduate.  There can  be no mistake
on the spiritual and religiousness of NA/AA.

28.

**Step 1:  We admitted that we were powerless over our addiction, that our lives
had become unmanageable.  Step 2:  We came to believe that a Power greater than
ourselves could restore us to sanity.  Step 3:  We made a decision to turn our will
and our lives over to the care of God as we understood Him.**

A straight forward reading of the 12 Steps shows clearly that the steps are

1   based on the monotheistic idea of a single God or supreme Being.  The

2   relevant Establishment Clause precedent bars governmental endorsement and

3   support of religion even in context in which no coercion exists.  The

4   preservation and transmission of religious beliefs and worships is com-

5   mitted to the private sphere (Lee, 505 U.S. at 589) and government  may

6   not support religious practices even when those engage in them have

7   freely chosen to do so

8                              29.

9        Even though there was some notice of NA/AA meetings in the begin-

10  ning, plaintiff was not ware of the degree and intensity of spirituality

11  part in the Sonoma County chapter.  Additionally plaintiff did not know

12  D.C.T.C. was mainly NA orientated pushing of reading of Big Book and

13  working the steps with a sponsor in NA/AA meetings.  Plaintiff was just

14  told of attendance, not all the other requirements that were added after

15  he joined, that were offensive on a religious basis.  concerning N/A.

16                              30.

17       Plaintiff believes he shows that D.C.T.C. and Sonoma County

18  Probation Department (hereafter refer to as S.C.P.D.) that they are

19  liable for a his sentence to Drug Court because of their recommendations

20  and special conditions of probation.  See Owen v. City of Independence,

21  445 U.S. 622, 63 L.Ed.2d. 673, 100 S.Ct. 1398 (1980), which held  that

22  municipalities do not benefit from the qualified immunity of their

23  officers.  See also Reed v. Village of Shorewood, 704 F.2d 943, 953

24  (7th Cir. 1983)(extending the rule of Owen regarding qualified immunity

25  to find a municipality potentially liable for its officers' executive

26  acts, though the officers themselves were protected against absolute

27  immunity). Scotto v. Almenas (2nd Cir. 1998) 143 F.3d 105 [Private parties

28  conspiring with state actors under color of law maybe liable .

31.

1    Plaintiff was sentenced on 8-25-05 in Department 15 by Judge Boyd in

2    Sonoma County Superior Court under the care of D.C.T.C. A conditional

3    sentence with special conditons "like in **Warner**" these special  conditions

4    were recommended   Hereby,  the D.C.T.C. and Probation Department (the

5    Director, Debbie Pope, of D.C.T.C. set forth a standard form used by the

6    Drug Court routinely provided to Judge in the Drug Court).  Judge  Boyd

7    sentenced plaintiff to 18 months conditional sentence and at least  nine

8    months in participation in Drug Court (see contract in exhibit "A" and "B").

9    In imposing these special conditions, Judge Boyd endorsed the Drug  Court

10   standard forms and practices of S.C.P.D. and D.C.T.C.

11   Plaintiff again believes defendants are liable because his injury

12   resulted from a custom or policy of D.C.T.C. and S.C.P.D., as  opposed to

13   and isolated instance of conduct (Monell v. Department of Social Services

14   436 U.S. 658, 690-91, 56 L.Ed.2d. 611, 98 S.Ct. 2018 (1978).  See  also

15   Adickes U.S.H. Kress and Company, 398 U.S. 144, 162-67, 26 L.Ed.2d 142,

16   90 S.Ct. 1598 (1970)(describing congressional intent in creating liability

17   for custom or practice).  Plaintiff alleges D.C.T.C. and S.C.P.D. recommen-

18   dation that he be required to participate in NA/AA therapy unquestionably

19   made pursuant to a general policy that was in the original contract signed

20   by plaintiff.  These meetings and conditions of participating in Drug Court

21   are routinely submitted to Drug Court Judge.

22                                   32.

23   The Supreme Court has made it crystal clear that principles of causa-

24   tion borrowed from tort law are relevant to civil rights actions brought

25   under section 1983 (Buenrostro v. Collazo, 973 F.2d. 39, 45 (1st Cir. 1992).

26   See Malley v. Briggs, 475 U.S. 335, 344 n.7, 89 L.Ed.2d. 271, 106 S.Ct.

27   1092 (1986); Monroe v. Pape, 365 U.S. 167, 187, 5 L.Ed.2d. 492, 81 S.Ct.

28   473 (1961).  However, tort defendants, including those sued under §1983 are

17

1   responsible for the natural consequences of [their] actions (<u>Malley</u>, 475

2   U.S. at 344 n. 7)(quoting <u>Monroe</u>, 365 U.S. at 187).  As the First  Circuit

3   has explained an actor may be held liable for "those consequences attribu-

4   table to reasonability  foreseeable intervening forces, including acts of

5   third parties" <u>Gutierrez - Rodriguez</u> v. <u>Cartagena</u> (1st Cir.1989) 882 F.2d 553,

6   561.                                    33.

7        Plaintiff alleges Drug Court Judge relies heavily on D.C.T.C. because

8   they do screening process for all Drug Court clients.            .  So there

9   is no doubt whether it was forseeable that the Judge under Prop. 36

10  would impose their recommendation of D.C.T.C. & S.C.P.D. was for-

11  seeable, the natural consequences of Judge imposing conditional sentence.

12       Quoting <u>Monroe</u> again, the First Circuit went on to state " A negligent

13  defendant will not be relieved of liability by an intervening cause  that

14  was reasonably forseeable, even if the intervening force may have "directly"

15  caused the harm.  An "unforseen and abnormal" intervention, on the  other

16  hand," breaks the chain of causality thus shielding the defendant from lia-

17  bilty.  Plaintiff believes the chain of causality was not broken (See <u>White</u>

18  <u>v.Roper</u> , 901 F.2d 1501, 1506 (9th Cir. 1990).  Given the neutral  advisory

19  role of D.C.T.C. and S.C.P.D. towards the court, it is entirely  a  natural

20  consequence. Again, refer to <u>W<sub>arner</sub></u> for a Judge to adopt the Drug  Court

21  Treatment Center recommendations as to therapy, courts generally rely heavily

22  on (especially in Prop 36 cases). See <u>Springer</u>, 821 F.2d at 876; Restatement

23  (Second) of Torts § 453 cmt. b (1965).

24       In <u>Warner</u>, the District Judge found that a Judge would follow  such

25  recommendations of the Probation Department.  Plaintiff asks the Court  to

26  look at this very question.  Plaintiff's injury              was not  the

27  sentencing judge decision to send him to D.C.T.C., rather the actions  of

28  NA/AA.  The NA/AA Chapter  in Somonma  County  which Plaintiff was exposed

34.

had a substantial religious component. D.C.T.C. and S.C.P.D. should have known this and not let plaintiff be exposed to this,especially after his objections.

35.

In <u>Malley</u>, supra, a Civil Rights action under §1983, against a state trooper who had procured a warrant for the plaintiff's arrest by submitting an affidavit. Plaintiff claimed the affidavit was legally insufficient. The district court had dismissed the case, believing the police officer to be absolutely immune when swearing out a warrant. The Court of Appeals reversed, resuscitating the action.  The officer argued in the Supreme Court not only that he was immune, but also that he was shielded from responsibility by his entitlement to rely on the judgement of the judicial officer in finding probable cause and issuing the warrant.  The Supreme Court ruled that such reliance was not justified if "a reasonably well-trained officer in [the same] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant.' Id. at 345.  If such was the case, the officer's application for a warrant was not objectively reasonable, because it risked an unnecessary danger of unlawful arrest.  "It is true," the Court observed,

> that in an ideal system an unreasonable request for a warrant would be harmless, because no judge would approve it. But ours is not an ideal system, [**12] and it is possible that magistrate, working under docket pressures, will fail to perform as a magistrate should. We find it reasonable to require the officer applying for the warrant to minimize this damage by exercising reasonable professional judgement.

36.

D.C.T.C. and S.C.P.D. should have not coerced plaintiff to attend NA/AA, they could have minimized plaintiff's damage by exercising reasonable professional judge-ment. Like in <u>Malley</u> with trooper defendants are liable too.

In <u>Turner v. Hickman</u>, 342 F.Supp.2d 887 (E.D. Cal. 2004),it was held, "Requiring inmates, as a condition for being granted parole, to participate in a drug treatment program based on the concept of a higher power to which participants had to submit was an establishment of religion prohibited by the First Amendment; although the program's literature said that it was "not a religious program," it unequivocally

CE-068
M) 0901

1  and wholeheartedly asserted that belief in "God" was a fundamental requirement of

2  participation.  U.S.C.A. Const.Amend.1.

3      This case is very similar to plaintiff's case.  Similarly, the Seventh Circuit

4  has ruled recently that where inmates were required to attend a substance abuse

5  program with explicit religious content on pain of being rated a higher security risk

6  and suffering adverse parole [**23] effects, the state impermissibly coerced partici-

7  pation in a religious program in violation of the Establishment Cause.  <u>Kerr v. Farrey</u>

8  , 95 F.3d 472 (7th Cir. 1996) ("In general, a coercion-based claim indisputably raises

9  an Establishment Clause question," Id. at 479).  See also <u>O'Connor v. Califoria</u>, 855

10 F.Supp. 303 (C.D. Cal. 1994)(no Establishment Clause violation where probationers were

11 offered a choice between A.A. and a secular program).

12                                    37.

13     Even if the prospect here is of well-intentioned officials, the conduct of all

14 named defedants is found to be impermissible under the Constitution.  The  injury

15 suffered by plainfiff is monumental.  Defendants showed a rare callousness throughout,

16 day in and day out ridicule of him not being serious just because of religious beliefs.

17 The plaintiff is in shock and awe that this still can happen in America today.  There

18 might be a disagreement on when the Constitutional line was crossed but plaintiff

19 believes there is no question to line being crossed.

20                                    38.

21                        <u>SECOND CAUSE OF ACTION</u>

22           <u>DENIAL OF PROTECTED RIGHTS UNDER CALIFORNIA LAW</u>

23                                    39.

24     Plaintiff incorporates by reference the allegaions contained in paragraphs 1-

25 37 as though fully set forth herein.

26                                    40.

27     Defendants at D.C.T.C. similarly violated plaintiff's rights threaten him

28 for asserting his religious rights, a violation of Free Speech under the First Amend-

1  ment. This was a direct violation of Cal.Civ.Code Section 51.7, 52.1, as well as

2  section 52(b) which provides damages as remedies for denial of protected rights,

3  concerning retaliation under color of law. The U.S. Supreme Court held in County of

4  Allegheny v. A.C.L.U., Greater Pittsburgh Chapter, 492 U.S. 573, 590-91 [109 S.Ct.

5  3086, 3099, 106 L.Ed. 472](1989), "That the government may not promote or affiliate

6  itself with any religious doctrine or organization, may not discriminate  against

7  persons on the basis of their religious and practices, may not delegate a governmental

8  power to a religious institution and may not involve itself too deeply in such an insti-

9  tution's affairs."

41.

11     Additionally defendants' counselors "'Bill' and 'Debbie', and his supervisor

12  'Tommy' are guilty of harrassment and interrogation and threat under color of law to

13  the suffering of the plaintiff, which is a natural, reasonable, and proximate result

14  of their actions.  "Harrassment," is defined as a course of conduct directed  at  a

15  specific person and serves no legitimate purpose.  18 U.S.C.A. 1514(c).  The term is

16  used in a variety of legal context to describe words, gestures and actions which tend

17  to annoy, alarm, or abuse (verbally) another person.  Again, the Supreme Court addresses

18  this subject in West Virginia Board of Education v. Barnette, 319 U.S. 624, 642, 63

19  S.Ct. 1178, 1187, 87 L.Ed. 1628 (1943).  The Court held that, "No official, high or

20  petty, can prescribe what shall be orthodox in politics, nationalism, religion, or

21  other matters of opinion force citizens to confess by word or act their forth therein.

42.

### THIRD CAUSE OF ACTION

### VIOLATION OF FREE EXERCISE CLAUSE

43.

26     Plaintiff incorporates by reference the allegations contained in paragraphs

27  1-41 as though fully set forth herein.

28  //

21

44.

Plaintiff DAVIS is entitled to the same constitutional rights as all other Americans to worship GOD in his own religion. This was not entirely possible when ninety (90) days and  (90) meetings were ; put on plaintiff as a punishment. Plaintiff DAVIS is a Baptist and traditionally as a Baptist there is a day of rest and worship.

Plaintiff was unable to dedicate one day to worship during the week due to requirement of D.C.T.C. compelling him to participate everyday in NA/AA. Defendants cause and deprived plaintiff rights secured by the Constitution and laws of United States. DAVIS will continue to be deprived until released on 1-26-08 from prison.

This is a clear violation of Free Exercise Clause, refer to <u>Elrod v. Burns</u>, 427 U.S. 347, 373 (1976), which stated, "The loss of First Amendment freedoms, for even a minimal period of time, unquestionably constitutes irreparable injury. The defendants have caused this injury here.

45.

### FOURTH CAUSE OF ACTION

### BREACH OF CONTRACT

PLAINTIFF Alleges D.C.T.C. Director, 'Debbie Pope', and S.C.P.D. breached Drug Court orders and conditions of probation by not providing a option of other self-help meetings. Contract states on exhibit "A" on line X9-Make all counseling sessions, court appearances, Narcotics Anonymous meetings (or other self-help meetings) as directed. It is clear in contract, NA program or other type of meetings it does not say (and)(it says or) a clear indication of alternative type meetings. D.C.T.C. insisted on NA/AA type meetings and would not budge for some unknown reason, even in face of plaintiff's many objections over religious based reasons. Defendants caused and deprived plaintiff of rights secured by the Constitution and laws of the United States.  Contract in Exhibit "B" was also violated.

46.

Again, Plaintiff alleges, the mere fact of his brief pre-sentence attendance

1  designed to demonstrate his commitment to rehabilitation, did not amount to a consent

2  to the aspect of the sentence that essentially required him to attend religious

3  exercises. Plaintff alleges D.A. breached contract signed by him regarding informa-

4  tion from D.C.T.C. would not be used against him in a prosuctorial fashion (refer to

5  Exhibit "C", page 5, lines 12-23) and contract signed by defendants (refer to Exhibit

6  "B", pg. 1. #4). This false information was supplied by D.C.T.C.

7                                        47.

8

9

10      Defendants violated plaintiff's rights in regards to, plaintiff was put in

11  Drug Court illegally under law. Proposition 36 mandates probation and drug treat-

12  ment for defendants convicted of non-violent drug possession offenses are defined

13  as unlawful possession for personal use, or transportation for personal use of any

14  controlled substance identified in Health and Safety Code §11054 (including heroine,

15  LSD, cocaine base, marijuana) §11055 (including cocaine, methamphetamine, and PCP),

16  §11056, §11057, §11058, Penal Code §1210.

17                                        48.

18      Plaintiff has no drug convictions. Plaintiff was on probation for Petty Theft

19  with a Prior (Penal Code §666). This is not a non-violent drug charge, this is a non-

20  violent theft charge. Defendants excluded under Penal Code §1210.1(b) excludes five

21  categories of defendants, one of which is a felony conviction other than a non-violent

22  drug possession offense. Defendants willfully and recklessly allowed plaintiff to be

23  subjected to modified probation and D.C.T.C. needlessly. D.C.T.C., probation, and

24  D.A. all allowed this injustice. In fact, in Drug Court contract, exhibit "A",

25  between lines X10 and X13, you can see where notification of being a drug offender

26  to police was crossed out because they knew plaintiff was not there on non-violent

27  drug offense. They never objected to Judge on any of these violations as

28  in Malley, they should have.              49.

                                          23

Penal Code §1210.1 is a narrowly tailored statutory scheme that requires the trial court to treat those convicted of non-violent drug possessions offenses "as a separate class subject only to the special probation rules" expressly included in sec. 1210.1.  In re Mehdizadeh, supra, 105 Cal.App.4th at p. 1005.

More significantly, "an accused may waive any rights in which the public does not have an interest and if waiver of right is not against public policy [cite](Cowan v. Superior Court, supra, 14 Cal.4th at p. 371).  The stated purpose of Proposition 36 to halt the wasteful expenditure of hundreds of millions of dollars each year on the incarcerated and reincarceration on non-violent drug users who would be better served by community based treatment.

50.

Defendants might try to say plaintiff gave up his rights, but this is not possible, due to being in Drug Court illegally under PC §1210.1, an order from Judge Boyd due to recommendations of S.C.P.D. and D.C.T.C.

Administration and County Alcohol and Drug Programs liability stems from Penal Code §1211, which states, "the County Drug Program administrator in each county, in consultation with representatives of the Court and County Probation Department, shall establish requirements, criteria, and fees for the successful completion of drug diversion programs which shall be approved by the County Board of Supervisors.

Furthermore, plaintiff, was held over twelve (12) months in D.C.T.C. in violation of Penal Code §1210.1(c)(3) Drug treatment services provided by subdivision (a) as a required condition of probation **may not exceed 12 months**, provided, however, that additional aftercare services as a condition of probation may be required for up to six months.  This was not the case for the plaintiff, he was kept over 14 months. This was in primary care and not aftercare.  Defendants hostile actions toward DAVIS was so offensive as to drive him out of D.C.T.C. and the Drug Court and thereby become the functional equivalent of a denial of the right of 'access to the courts'.  Again, defendants contributed to 14th Amendment Rights violation when they could have stopped it.

1

2

3

4      Judge Boyd never received accurate information on DAVIS to make

5   proper decisions regarding DAVIS, major decisions that would affect

6   plaintiff's future attendance of church for a long time.   Defendants

7   violated plaintiff's constitutional rights by supplying Judge faulty

8   information regarding plaintiff's performance.   DAVIS would point out

9   his violation that got him kicked out was that he did not want to con-

10   tinue to be exposed to AA/NA anymore.   DAVIS had hoped they would show

11   mercy to him and find another program, as he observed happen on differ-

12   ent occasions with other people in program. Who had either broken the

13   law again or just wanted to quit and not continue.   DAVIS will be

14   bringing these John and Jane Does as witnesses in order to show how bias

15   in fact D.C.T.C. was against DAVIS in regards to his religious beliefs.

16      All defendants acted under the color of the law and deprived DAVIS

17   of many rights entitled to him by the Constitution of the United States.

18   All defendants showed a pattern of bias all the way through D.C.T.C.

19   treatment for  DAVIS and beyond.

20      Finally, DAVIS would point out in Warner (115 F.3d 1068), Warner had

21   a few days to check out what he was getting into.   DAVIS contends here

22   he did not have a choice beforehand.   DAVIS could not even look at one

23   thing to do with program at all before being sent to Drug Court.   DAVIS

24   was told by Judge Wong before entering Drug Court forum.   She states on

25   transcripts, marked Exhibit "K", dated August 16th, 2005, she states on

26   page 9, lines 3-4, "You come back here, and Mr. Davis is going to prison."

27   In essence, before DAVIS could look  at anything he was locked into program

28   before seeing anything to do with it because threat of prison from Judge

CMC-CE-008
08/04) 0901

1  Wong.  DAVIS was compelled by the state's guided   power to stay in a

2  religious program.  In Warner, the County Probation argued that Warner

3  following the advice of his attorney, sampled the A.A. sessions prior to

4  sentence and made no objection to their religious content at the time

5  of sentence, the Probation Department's recommendation was not a proxi-

6  mate cause of the injury.  The dissent argues also that Warner's conduct

7  constituted consent.  We are not persuaded by either argument (stated

8  the Court in Warner (Warner v. Orange County Dept. of Probation) (1997)

9  115 Fed.3rd. 1068.  Plaintiff DAVIS did not get to sample one day of

10  Sonoma County chapter meetings before Judge Wong made statements of "if

11  he comes back to this Court he goes to prison."  DAVIS, the plaintiff,

12  in this action had no choice.

13      Defendants' most pressing concern was not to have another mental

14  breakdown as before due to NA/AA and pressure of D.C.T.C. was putting

15  on him to work steps and work with a sponsor.

16      Finally Plaintiff alleges if not for illegal act of D.C.T.C., D.A.,

17  Director Debbie Pope and Sonoma County Probation not notifying Judge of

18  of Plaintiff's ineligibility due to Penal Code §1210-1211 not allowing

19  anyone without a drug possession charge, he alleges none of his rights

20  such as the protected rights   and other Civil Rights violations would

21  have happen to him.  Plaintiff DAVIS believes Judge never received

22  information that he could end up in Oakcrest again due to stress or

23  whether Judge knew DAVIS was compelled by D.C.T.C. before to go to

24  Oakcrest. (Refer to exhibit "M".)

25      DAVIS had tried to get D.C.T.C. files from Criminal Court for

26  this action and a criminal appeal and was answered by County Clerk and

27  Judge Boyd in a letter stating to him these records would have to be

28  retrieved from D.C.T.C. by plaintiff. (See exhibit "R" ).  DAVIS sent

26

1  two people with Power of Attorney numerous times to D.C.T.C. and they were stone-

2  walled of getting any information in his files. DAVIS alleges because they do not want

3  their true actions brought to light. DAVIS knows of one other person who was persecuted

4  for religious beliefs and will bring this person as witness as there is religious

5  persecution in D.C.T.C.

6      **WHEREFORE,** Plaintiff prays judgment against defendants as follows:

7                              **RELIEF REQUESTED**

8      1. A declaratory judgment, pursuant to 28 USC §2201, that defendants violated

9  plaintiff's civil and legal rights when they unlawfully forced him to attend NA/AA a

10  recognized type of religion and to force plaintiff to miss his religious attendance,

11  and a breach of contract. Being in Drug Court illegally per PC §1210 - 1211.

12      2. An injunction preventing and restraining D.C.T.C. (non-profit org.) and

13  S.C.P.D. as well as Administration and County Alcohol & Drug Program continuing to

14  subject people to religious programs such as NA/AA without option of secular program.

15      3. That this Court convene a Federal Grand Jury to investigate possible

16  criminal violations of 18 USC 241 and 242.

17      4. Damages against defendants as follows:

18      5. Punitive damages in amount to be determined by jury.

19      6. As to the First Cause of Action, violation of Establishment Clause, an

20  award of $500,000 to plaintiff.

21      7. As to the Second Cause of Action, denial of rights, an award of $200,000

22  to plaintiff.

23      8. As to the Third Cause of Action, violation of Free Exercise, an award of

24  $500,000 to plaintiff.

25      9. As to the Fourth Cause of Action, breach of contract, an award of $500,000

26  to plaintiff.

27      Thus, the plaintiff prays:

28      10 . A grand total of 1.7 million dollars due to the plaintiff .

1    11. Plaintiff requests trial by jury in all issues triable by jury.

2    12. For any other relief that this Court finds true and proper.

3    13. That Court order release of Drug Court file to Scott Davis or plaintiff

4    and Court can get a clear record between 8-25-05 and 11-06-06 meaning all information

5    related to Court and counselor notes on progress of Davis throughout his participation,

6    all Judge's notes to do with bi-monthly visits.

7    14. For costs of suit.

8    Date: November 31st, 2007

Scott William Davis, In
Propria Persona